*William H. Plank, II, et al. v. James P. Cherneski, et al.*, Misc. No. 3, September Term, 2019, Opinion by Booth, J.

**FIDUCIARY DUTIES – MANAGING MEMBERS OWED TO LIMITED LIABILITY COMPANY AND MEMBERS – AGENCY.** Managing members of an LLC owe common law fiduciary duties to the LLC and to the other members based upon the fiduciary relations governing the principles of agency.

**BREACH OF FIDUCIARY DUTY AS AN INDEPENDENT CAUSE OF ACTION.** In *Kann v. Kann*, 344 Md. 689 (1997), and our jurisprudence that followed, this Court recognized a breach of fiduciary duty claim as an independent cause of action. To establish a breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. The remedy for the breach is dependent upon the type of fiduciary relationship, and the historical remedies provided by law for the specific type of fiduciary relationship and the specific breach in question, and may arise under a statute, common law, or contract. A breach of fiduciary duty cause of action should be analyzed on a case-by-case basis. If the plaintiff describes a fiduciary relationship, identifies a breach, and requests a remedy historically recognized by statute, contract, or common law applicable to the particular type of fiduciary relationship, the court should permit the count to proceed. The cause of action may be pleaded without limitation as to whether there is another viable cause of action to address the same conduct. To be clear, this does not mean that every breach will sound in tort, with an attendant right to a jury trial and monetary damages. The remedy will depend upon the specific law applicable to the specific fiduciary relationship at issue.

**BREACH OF FIDUCIARY DUTY – SUFFICIENCY OF EVIDENCE.** The circuit court did not err in entering judgment in favor of the managing member on the independent breach of fiduciary duty count. The court made a factual determination that there was insufficient evidence of a breach of fiduciary duty.

**ATTORNEYS' FEES ARISING UNDER FEE-SHIFTING PROVISION IN OPERATING AGREEMENT.** The circuit court correctly interpreted the fee-shifting provision of the parties' Operating Agreement and did not err in determining that the managing member and the Company were the "substantially prevailing parties" and in awarding the defendants their attorneys' fees in their entirety. Considering the overlapping nature of the claims, the circuit court's approach to awarding attorneys' fees in this case is consistent with the "common core of facts" doctrine, which was a reasonable method for awarding attorneys' fees in this case.

Circuit Court for Anne Arundel County
Case No.: C-02-CV-16-002078
Argued: December 5, 2019

IN THE COURT OF APPEALS

OF MARYLAND

Misc. No. 3

September Term, 2019

WILLIAM H. PLANK, II, et al.

v.

JAMES P. CHERNESKI, et al.

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Battaglia, Lynne A.
  (Senior Judge, Specially Assigned),

JJ.

Opinion by Booth, J.

Filed: July 14, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Does Maryland recognize an independent cause of action for breach of fiduciary duty? Courts and commentators have been asking this question for 23 years since this Court articulated its holding in *Kann v. Kann*, 344 Md. 689 (1997).[1] When attempting to answer the question, Maryland appellate courts have not spoken uniformly on this issue. Indeed, this Court has made seemingly inconsistent pronouncements, at times calling for a case-by-case analysis, *see Kann*, 344 Md. at 713, and at other times, making a blanket assertion that "Maryland does not recognize a separate tort action for breach of fiduciary duty." *Int'l Bhd. of Teamsters v. Willis Corroon Corp. of Md.*, 369 Md. 724, 727 n.1 (2002). Litigants pick and choose which statement they believe to be controlling, depending on which outcome benefits their position. Understandably, the muddled state of our jurisprudence has created inconsistent and irreconcilable conclusions by the Court of Special Appeals, federal courts, and state circuit courts. For this reason, the Court of Special Appeals filed a Certification pursuant to Maryland Rule 8-304, requesting that this Court provide guidance concerning whether an independent cause of action exists, as well as its scope and parameters.

---

[1] *See, e.g., Froelich v. Erickson*, 96 F. Supp. 2d 507, 526 n.22 (D. Md. 2000) (explaining that there appears to be "a split of authority . . . as to whether the Court of Appeals rejected breach of fiduciary duty as an independent tort"); Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* at 576–79 (6th ed. 2018) (posing, but not purporting to answer the question of whether Maryland recognizes an independent cause of action for breach of fiduciary duty); Kevin Arthur, *Breach of Fiduciary Duty: a Cause of Action in Maryland?,* Federal Bar Association Maryland Chapter Newsletter (March 2013) ("Does Maryland recognize an independent cause of action for breach of fiduciary duty? The courts disagree amongst themselves.").

For the reasons more fully outlined below, we answer the certified questions as follows. This Court recognizes an independent cause of action for breach of fiduciary duty. To establish a breach of fiduciary duty, a plaintiff must demonstrate: (1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. Under our *Kann* analysis, a court should consider the nature of the fiduciary relationship and possible remedies afforded for a breach, on a case-by-case basis. If a plaintiff describes a fiduciary relationship, identifies a breach, and requests a remedy recognized by statute, contract, or common law applicable to the specific type of fiduciary relationship and the specific breach alleged, a court should permit the count to proceed. The cause of action may be pleaded without limitation as to whether there is another viable cause of action to address the same conduct. To be clear, this does not mean that every breach will sound in tort, with an attendant right to a jury trial and monetary damages. The remedy will depend upon the specific law applicable to the specific fiduciary relationship at issue.

We explain our answer to the certified questions within the context of the dispute between the members of Trusox, LLC, a Maryland limited liability company ("Trusox" or the "Company"). William H. Plank, II and Sanford R. Fisher, both minority members of Trusox, filed an action alleging direct and derivative claims against James P. Cherneski, the Company's President, Chief Executive Officer ("CEO"), and majority member. Among other monetary and injunctive relief, Mr. Plank and Mr. Fisher ("Minority Members") sought an order dissolving the LLC or appointing a receiver to take over its management.

Following a bench trial, the Circuit Court for Anne Arundel County entered judgment: (1) in favor of Mr. Cherneski on most of the Minority Members' claims, including the claims for dissolution and receivership and, as most relevant to the issue raised in the Court of Special Appeals' Certification, their claim for breach of fiduciary duty, and (2) in favor of the Minority Members on certain other claims. Finding Mr. Cherneski and the Company to have prevailed on the most significant claims, the court entered an award of attorneys' fees in favor of Mr. Cherneski and the Company pursuant to a fee-shifting clause in the Trusox Operating Agreement.

The Minority Members assert that the circuit court committed multiple errors in resolving their breach of fiduciary duty claim. They also contend that the circuit court erred in its award of attorneys' fees by misinterpreting the contractual fee-shifting provision in the Trusox Operating Agreement. For the reasons explained below, we hold that the circuit court did not err in entering judgment in favor of Mr. Cherneski on the breach of fiduciary duty count. We further hold that the circuit court did not err in interpreting the contractual language of the fee-shifting provision by determining that the operative contractual language applied to all counts between the parties to this action, and by concluding that Mr. Cherneski and Trusox were the substantially prevailing parties. Finally, we hold that the circuit court did not abuse its discretion by awarding Mr. Cherneski and Trusox all of their attorneys' fees, as the court's methodology was consistent with the "common core of facts" doctrine. We affirm the circuit court's judgment in its entirety.

# I.

## Factual Background and Procedural History

James Cherneski is a former professional soccer player who invented and patented a non-slip athletic sock. Based upon his personal experience, Mr. Cherneski was determined to create an athletic sock that would eliminate movement of a player's foot in his or her shoe during athletic activity. Over the course of many years, through trial and error, Mr. Cherneski developed a non-slip sock, and ultimately obtained patents for the athletic sock and its components.

As he was developing the product and securing patents, Mr. Cherneski accepted investments by Sanford Fisher and Jeff Ring. In April 2011, Mr. Cherneski formed Trusox, LLC to produce and sell the patented sock. Mr. Cherneski, Mr. Fisher, and Mr. Ring were the original members. At all times, Mr. Cherneski retained legal control of the Company.

By November 2011, the Company had a product that could be sold and marketed. Mr. Cherneski undertook marketing efforts, attempting to convince stores to sell the product. When the product did not sell, Mr. Cherneski determined that the product needed visibility, and he gave the product to professional soccer players in Europe in order to boost exposure and visibility. Mr. Cherneski traveled to England to work his connections in the professional soccer world, attempting to have the most high-profile players wear Trusox athletic socks. Mr. Cherneski's strategy worked. With an increase in product visibility, Trusox began receiving more orders for its product.

In June 2013, Mr. Cherneski began discussions with William H. Plank, II, about a possible investment. In October 2013, Mr. Plank invested $1.5 million in Trusox and

acquired a 20% membership interest, with Mr. Cherneski owning a 65% membership interest, and Mr. Fisher and Mr. Ring each owning a 7.5% membership interest.

The members of Trusox, along with Trusox (by Mr. Cherneski as its CEO and President) entered into an Amended and Restated Operating Agreement ("Operating Agreement") on October 14, 2013. The Operating Agreement gives Mr. Cherneski, as the majority member, President, and CEO, general authority over most decisions relating to Trusox and its operations, including: (1) the right to make most decisions and take most actions[2] on behalf of the company; (2) the power to appoint and remove officers of the company and assign them such powers, authorities, and responsibilities as "he may determine"; and (3) the "authority to manage and operate the Company in the ordinary course of business . . . ."

Consistent with the authority granted in the Operating Agreement, Mr. Cherneski's role in Trusox has always been significant—he not only created the sock; he marketed it. The circuit court summarized Mr. Cherneski's instrumental and key role, as the President, investor, marketer, and producer as follows:

> Every bit of evidence shows that it is [Mr.] Cherneski who is focused on the marketing, investment, the development, the maintaining, the establishing the relationship with the athletes, the agents, the distributers. It is [Mr.] Cherneski who sells the socks. It is [Mr.] Cherneski who is able to relate the slippage issues in terms of the foot–the placement, the striking. It is

---

[2] Given Mr. Cherneski's 65% ownership interest, only actions that require supermajority consent under the Operating Agreement are outside his authority. These actions include amendments to the Operating Agreement or articles of organization; merger; sale or transfer of all or substantially all of the Company's assets; sale, transfer, or encumbrance of the Company's intellectual property; dissolution; certain transactions related to members of Mr. Cherneski's family; and making a capital call.

[Mr.] Cherneski who created the business. It is [Mr.] Cherneski who knows the business. It is [Mr.] Cherneski who is the business.

From the formation of the Company until the lawsuit was filed by the Minority Members, the Company had fits and starts. As the circuit court determined, Trusox was a fledgling business, which faced challenges in its efforts to grow and become a successful and sustainable business. Although the Company experienced some success, it continued to struggle financially. In January 2015, after receiving two shipments of defective adhesive material that was necessary for production of the sock, Trusox needed to obtain replacement material. Mr. Cherneski testified that a production delay ensued, which interfered with the Company's cash flow, leading to additional cash and accounts payable issues.

At the time of trial in 2017, Trusox had only five employees. At various times before then, it had employed more than 20 people. In 2015, Trusox averaged manufacturing 910 pairs of socks per day, with a high of 2,100 pairs in a single day. In 2016, the average production was 230 pairs of socks per day, with some months much higher, and other months much lower. Slowdowns in production generally occurred when Trusox ran out of materials and lacked funds to obtain more. The Company often lacked funds to pay its vendors and consistently owed much more in payables than it had in cash on hand. On several occasions in 2015 and 2016, Trusox had been late in paying its employees, for as many as 14 days. By the time of trial in 2017, however, the Company had received additional funding, was hiring additional personnel, and was ramping up production.

In late 2015, the Minority Members were disenchanted with Mr. Cherneski's leadership of the Company. In particular, they were concerned about Trusox's failure to

6

make timely payments to vendors. Mr. Plank was disappointed that Mr. Cherneski had not followed his suggestions concerning the direction and priorities of the Company. All of the members agreed that Trusox needed a cash infusion, but they disagreed on the manner in which it should be raised. Mr. Plank offered to loan Trusox $750,000 on terms that required repayment within two years, and if not repaid, Mr. Cherneski would lose his majority interest in the Company. Mr. Cherneski was not interested in Mr. Plank's offer, and instead, sought to raise $3 million through a limited public offering. At the time of trial, Mr. Cherneski had successfully raised $1.8 million in a process that took significantly longer than he had originally anticipated. Mr. Cherneski's funding efforts became the source of additional disputes, with the Minority Members asserting that Mr. Cherneski distributed inaccurate information to potential investors, and Mr. Cherneski contending that the Minority Members were interfering with his efforts by attempting to dissuade potential investors from investing. We discuss additional facts below as they pertain to the parties' contentions.

## A. *The Lawsuit*

In June 2016, Minority Members, Messrs. Fisher and Plank,[3] filed an action against Mr. Cherneski and Trusox,[4] alleging, among other things, that Mr. Cherneski was violating the Operating Agreement, had engaged in unlawful conduct related to investors and employees, and had breached contractual and fiduciary duties. In their operative second amended complaint ("Complaint"), the Minority Members alleged nine causes of action,

---

[3] Minority Member Jeff Ring was not a party to this litigation.

[4] The Minority Members named Trusox as a nominal defendant.

including counts for breach of contract (Counts I, II, III, and IV), invasion of privacy (Counts V and VI), breach of fiduciary duty (Count VII), dissolution (Count VIII), and appointment of a receiver (Count IX). The Minority Members sought injunctive relief, compensatory and punitive damages, and attorneys' fees and costs.

Only the Minority Members' cause of action for breach of fiduciary duty (Count VII) and the attorneys' fees dispute are at issue on appeal. With respect to the breach of fiduciary duty count, the Minority Members alleged that Mr. Cherneski placed the Minority Members' investments at risk by engaging in unlawful actions that exposed the Company to potential future damages claims for regulatory violations and lawsuits. Specifically, the Minority Members alleged that Mr. Cherneski breached his fiduciary duties by: (1) violating Maryland's wage laws by paying employees late on multiple occasions; (2) refusing to provide the Minority Members with reasonable access to the Company's books and records despite their written demand for the same; (3) exposing the Company to liability by selling unregistered securities in violation of securities laws and misleading potential investors by presenting inflated and unrealistic financial projections and failing to disclose the existence of this lawsuit; and (4) violating trademark and right to publicity laws by failing to obtain appropriate permission before using certain images and logos in promotional materials. Although the Complaint sought both monetary and injunctive relief, the Minority Members conceded at trial that they had not incurred any monetary damages as the result of Mr. Cherneski's alleged breaches and were only seeking equitable relief.

The parties proceeded with an expedited bench trial which took place over the course of six days in February and March 2017. At the close of the Minority Members' case-in-

8

chief, defense counsel moved for judgment, and the circuit court heard arguments. The circuit court found "very little compelling evidence to support [the Minority Members'] case in the light most favorable to [the Minority Members] as it related to dissolution or receivership, the breach of contract . . . , the invasion of privacy, publicity, and false light." As part of its ruling from the bench, the circuit court discussed the elements of each count, and the facts pertaining to the count, and granted judgment in favor of Mr. Cherneski and Trusox on Count III (breach of contract); and Counts V and VI (invasion of privacy). The Court denied the Defendants' motion for judgment on three of the breach of contract counts (Counts I, II, and IV), and Count VII (breach of fiduciary duty). After requesting trial memoranda from the parties on Count VIII (dissolution) and Count IX (appointment of a receiver), the circuit court granted the Defendants' motion for judgment on those counts, providing detailed findings of fact and legal conclusions from the bench.

After the Defendants presented their case,[5] the court entered judgment in favor of the Minority Members on the breach of contract claims alleged in Counts I, II, and part of IV, and awarded injunctive relief on those counts. Specifically, with respect to Count I, the court ordered Mr. Cherneski to make available Trusox's books and records within ten days of any reasonable request by the Minority Members and to provide them with tax documentation within 75 days of the end of each tax year. As to Count II, the court ordered Mr. Cherneski to execute necessary documentation to assign to Trusox certain intellectual property identified in the Operating Agreement. As to Count IV, the court precluded Mr.

---

[5] The Defendants' case consisted of testimony by Mr. Cherneski, after which the Defendants rested.

Cherneski's brother from receiving any benefit from "any oral or written contract relating to any services that [the brother] provided to Trusox, LLC."

*Breach of Fiduciary Duty Count*

At the close of the Minority Members' case-in-chief, when considering the Defendants' motion for judgment, the trial court initially reserved judgment on Count VII, for breach of fiduciary duty, stating that the court had read the decision in *Kann v. Kann*, 344 Md. 689 (1997), and that "there seem[s] to be within that case a clear recognition that there is no stand-alone tort for a breach of fiduciary duty," but that "the actions may have been a breach of fiduciary duty." The court concluded, however, that relief under Count VII "would be effectively perhaps of no weight. Because the Court is not sure how if there is a breach of fiduciary duty for failing to inspect the books, records, assign the patents, or the breach of contract regarding [Mr. Cherneski's brother], what damages may flow." The court reasoned that such relief "might be more of the injunctive relief or the declaratory relief that the parties are requesting." When it later entered judgment in favor of Mr. Cherneski on Count VII, however, the court found that there was "insufficient evidence to show that there has been a breach of fiduciary duty."

*Attorneys' Fees*

Having decided each count in the Complaint, the circuit court considered the provisions of the Operating Agreement which addressed attorneys' fees. After a three-day evidentiary hearing at which the circuit court considered the appropriateness and fairness of attorneys' fees, the court determined that under the fee-shifting provisions of Section 14.13 of the Operating Agreement, Mr. Cherneski and Trusox had prevailed on a majority

10

of the claims and were entitled to attorneys' fees. The circuit court entered judgment in favor of Mr. Cherneski against Mr. Plank and Mr. Fisher, jointly and severally, in the principal amount of $453,806.49, representing attorneys' fees and expert and deposition costs, and entered judgment in favor of Trusox against Mr. Plank and Mr. Fisher, jointly and severally, in the amount of $189,269.15, representing attorneys' fees, deposition costs, and expenses incurred in its defense, together with post-judgment interest.

## B. *Proceedings Before the Court of Special Appeals*

The Minority Members filed a timely appeal to the Court of Special Appeals. On appeal, they raised the following questions, which we have consolidated and rephrased:[6]

> 1. Did the circuit court err in entering judgment in favor of Mr. Cherneski and Trusox on the Minority Members' breach of fiduciary duty claims?
>
> 2. Did the circuit court err in awarding attorneys' fees to Mr. Cherneski and Trusox under the Operating Agreement's fee-shifting provisions?

---

[6] The questions presented by the Minority Members in their brief to the Court of Special Appeals are as follows:

1. Did the Circuit Court err in determining that no independent cause of action for breach of fiduciary duty exists under Maryland law?

2. Did the Circuit Court err in not applying the factors set forth in *Kann v. Kann*, 344 Md. 689 (1997), to analyze the breach of fiduciary claim?

3. To the extent the Circuit Court ruled in favor of Cherneski based on its finding that there was insufficient evidence to show there [sic] that was a breach of fiduciary duty, did it err as a matter of law in disregarding uncontroverted evidence of Cherneski's violations of Maryland and Federal law?

4. Did the Circuit Court err in awarding attorneys' fees to Defendants rather than Plaintiffs under the fee-shifting clause of the Amended and Restated Operating Agreement?

11

The Court of Special Appeals heard oral arguments in March 2019. Subsequently, the panel determined that the legal questions presented in this matter should be certified to the Court of Appeals. On August 15, 2019, the Court of Special Appeals filed a Certification Pursuant to Maryland Rule 8-304. In the Certification, the Court of Special Appeals posed two questions of law as follows:

1. May minority members of an LLC (a) bring a stand-alone cause of action for breach of fiduciary duty against the managing member of the LLC (b) premised on allegations that the managing member was engaged in unlawful actions that placed at risk the investments of the minority members?

2. If so, is such a claim (a) limited to allegations that would also support another viable cause of action, (b) limited to allegations that would not also support another viable cause of action, or (c) not limited by whether or not there is another viable cause of action to address the same conduct?

This Court granted the Certification, and pursuant to Maryland Rule 8-304(c)(3), issued a writ of *certiorari* that included the entire action. The Court permitted additional briefing on the certified questions.

## II.

## Discussion

### A. *Standard of Review*

Pursuant to Maryland Rule 8-131(c), "[w]hen an action has been tried without a jury, the appellate court will review the case on both the law and the evidence." We will "not set aside the judgment of the trial court on the evidence unless clearly erroneous," giving "due regard" to the trial court's opportunity to "judge the credibility of the

12

witnesses." *Id.* A trial court's findings are not clearly erroneous if "any competent material evidence exists in support of the trial court's factual findings[.]" *Webb v. Nowak*, 433 Md. 666, 678 (2013). "A trial court's decision whether to award particular forms of equitable relief based on its fact findings and the applicable legal standards is reviewed for abuse of discretion." *Bontempo v. Lare*, 444 Md. 344, 363 (2015) (citing *Comm'n on Human Relations v. Talbot Cty. Det. Ctr.*, 370 Md. 115, 127 (2002)).

"When a trial court decides legal questions or makes legal conclusions based on its factual findings, we review these determinations without deference to the trial court." *MAS Assocs., LLC v. Korotki*, 465 Md. 457, 475 (2019) (citing *Ins. Co. of N. Am. v. Miller*, 362 Md. 361, 372 (2001)). "Where a case involves the application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review." *Spaw, LLC v. City of Annapolis*, 452 Md. 314, 338 (2017) (citations and quotations omitted). Similarly, "[t]he interpretation of a written contract is a question of law for the court subject to *de novo* review." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008) (citing *Diamond Point v. Wells Fargo*, 400 Md. 718, 751 (2007)).

## B. Parties' Contentions

The Minority Members contend that the circuit court committed multiple errors in resolving their breach of fiduciary duty claim, by: (1) concluding that Maryland does not recognize an independent cause of action; (2) failing to consider and apply the factors set forth in *Kann v. Kann*, 344 Md. 689 (1997); and (3) finding that "there is insufficient evidence to show" that Mr. Cherneski breached his fiduciary duties. They also assert that

13

the circuit court erred in its award of attorneys' fees by misinterpreting the contractual fee-shifting provision in the Operating Agreement.

Conversely, Mr. Cherneski contends that the case law is clear: Maryland does not recognize an independent breach of fiduciary duty tort. Alternatively, Mr. Cherneski argues that if Maryland does allow an independent cause of action, the circuit court did not enter judgment based upon a legal conclusion that no cause of action existed. Rather, Mr. Cherneski contends that the circuit court considered the independent cause of action and entered judgment after making a factual determination that there was "insufficient evidence to show that there was a breach of fiduciary duty." Mr. Cherneski asserts that there is ample factual evidence in the record to support the circuit court's factual finding, which he contends was not clearly erroneous.

Concerning the court's attorneys' fee award, Mr. Cherneski argues that the circuit court correctly applied the fee-shifting language in the Operating Agreement, in determining that the language applied to all claims brought by the Minority Members within the action, and that the court did not abuse its discretion in awarding Mr. Cherneski and the Company all of their attorneys' fees without apportionment.

### C. Analysis

*Maryland Limited Liability Companies – Statutory Framework*

The dispute between the parties in this case arises from their membership in Trusox, LLC, a Maryland limited liability company. It is useful to start our analysis with a brief overview of the Maryland Limited Liability Company Act ("LLC Act"), Maryland Code

Corporations and Associations Article ("CA"), Title 4A, because this statute, together with the Operating Agreement, creates the legal obligations and duties discussed herein.

The LLC Act provides the statutory genesis for the formation of a Maryland limited liability company. An LLC is an unincorporated business organization. CA § 4A-101(k). The LLC Act was formed "to give the maximum effect to the principles of freedom of contract and to the enforceability of operating agreements." CA § 4A-102(a). An LLC is formed by an individual causing articles of organization to be executed and filed with the State Department of Assessments and Taxation. CA § 4A-202. The owners of the LLC are referred to as "members." CA § 4A-101(m). The members' relationship with one another, the affairs of the LLC, and the conduct of the LLC's business are governed by contract, defined as an "operating agreement." CA § 4A-101(p). The operating agreement adopted by the members addresses, *inter alia*, how the LLC "shall be managed, controlled, and operated"; the manner in which members share profits and losses; the manner in which new members may be admitted; procedures for assignment of membership interests; and meeting and voting procedures. CA § 4A-402(a)(1)-(8).

Accordingly, here, the parties' relationship is governed by the contractual terms of their Operating Agreement. Under the Operating Agreement, the parties designated Mr. Cherneski as the President and CEO. Per the terms of the Operating Agreement, aside from extraordinary actions which required super-majority consent, *see* footnote 2, *supra*, as the owner of a 65% membership interest, Mr. Cherneski had broad decision-making authority over most decisions relating to Trusox and its operations.

15

Although the Operating Agreement provides the general terms of Mr. Cherneski's authority as the President, CEO, and owner of a majority interest in the Company, the Operating Agreement is silent with respect to any fiduciary duties that Mr. Cherneski owes to the Minority Members. So too, is the LLC Act.[7] With no statutory or contractual provisions establishing a fiduciary duty between the parties, we look to whether such a fiduciary relationship exists under common law.

*Common Law Fiduciary Duty Owed by Managing Members to the LLC and the Minority Members*

This Court has not previously decided whether a managing member of an LLC owes a common law fiduciary duty to the Minority Members. Many courts have answered that

---

[7] Maryland is not the only state that does not specify by statute the fiduciary duties of members or managers. William Callison & Allan W. Vestal, *They've Created a Lamb with Mandibles of Death: Secrecy, Disclosure, and Fiduciary Duties in Limited Liability Firms*, 76 Ind. L.J. 271, 281–86 (2001). In 2001, Professors Callison and Vestal observed that some state LLC statutes, including the Maryland LLC statute, do not address the member or manager fiduciary duties, leaving the matter to be addressed in the operating agreement, or through judicial common-law development. *Id.* at 281 n.49. Like Maryland, Arizona and New Mexico also remain silent as to any fiduciary duty owed. *TM2008 Inv., Inc. v. Procon Capital Corp.*, 323 P.3d 704, 707 (Ariz. Ct. App. 2014) ("Unlike other statutorily-blessed business arrangements, the LLC Act does not refer to any baseline fiduciary duties that members of an LLC owe to the LLC or to one another.") (footnote omitted); *In re Deerman*, 482 B.R. 344, 371–73 (Bankr. D.N.M. 2012) (recognizing that the state LLC statute uses trust-type language but does not create a fiduciary relationship between the parties). Other states impliedly recognize the common law fiduciary duty without statutorily governing the fiduciary duty of the members. *See* Kan. Stat. Ann. § 17-76,134(c) (2014) ("To the extent that, at law or in equity, a member or manager or other person has duties, including fiduciary duties, to a limited liability company or to another member or manager . . . the member's or manager's or other person's duties may be expanded or restricted or eliminated by provisions in the operating agreement[.]"); Tex. Bus. Orgs. Code Ann. § 101.401 (2006) ("The company agreement of a limited liability company may expand or restrict any duties, including fiduciary duties, and related liabilities that a member, manager, officer, or other person has to the company or to a member or manager of the company.").

question in the affirmative, including the Court of Special Appeals in *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 197 Md. App. 586 (2011). For the reasons so aptly explained in *Wasserman,* we join these courts and hold that managing members of an LLC owe common law fiduciary duties to the LLC and to the other members based on principles of agency.

Despite the statutory silence concerning fiduciary duties in the LLC Act, "[m]anaging members are clearly *agents* for the LLC and each of the members, which is a fiduciary position under common law." *Id.* at 616 (emphasis in original) (citations omitted). Accordingly, managing members of an LLC owe fiduciary duties to the LLC and the minority members arising under traditional common law agency principles. As succinctly stated by the Court of Special Appeals in *Wasserman*:

> In the partnership and corporate context, fiduciary duties are not born of statutory language-the underlying fiduciary duties pre-exist the statutes, and those duties exist as such unless limited by statute . . . . The same holds true in the LLC context. Because no Maryland statute precludes, or even limits, managing members' fiduciary duties under common law, those underlying duties apply.

*Id.* We also agree with the intermediate appellate court that the language of the LLC Act suggests "that provisions within operating agreements could alter existing duties or create other duties that would otherwise not exist." *Id.* (citing CA § 4A-402(a) ("Except for the requirement set forth in § 4A-404 of this subtitle that certain consents be in writing, members may enter into an operating agreement to regulate or establish any aspect of the affairs of the limited liability company or the relations of its members . . . .")). However,

17

here, there are no limitations in the Operating Agreement that would otherwise displace or alter the fiduciary duties arising from the agency relationship.[8]

As the President, CEO, and majority interest member in Trusox, Mr. Cherneski owed fiduciary duties to the Minority Members and the LLC arising under common law principles of agency.

*Breach of Fiduciary Duty Case Law in Maryland*

Before we consider the circuit court's disposition of the Minority Members' breach of fiduciary duty count, it is necessary to consider and answer the certified questions from the Court of Special Appeals involving whether this Court recognizes an independent

---

[8] After *Wasserman* was decided, in the 2011 Legislative session, the General Assembly considered a bill that addressed, *inter alia*, the fiduciary duties of an LLC member. House Bill 637, as introduced, would have added a new section 4A-402.1 to the LLC Act, which would have permitted members of an LLC, through their operating agreement, to eliminate a member's fiduciary duties to other members, other than for acts or omissions that constitute a bad faith violation of the implied contractual covenant of good faith and fair dealing. House Bill 637 passed the House of Delegates with proposed Section 4A-402.1 intact. The House of Delegates Economic Matters Committee Floor Report for House Bill 637 described the "Current Law and Background" as follows:

> Unlike the corporate and general partnership context, there is no statute expressly addressing LLC members' fiduciary duties. However, as recently explained in *Wasserman v. Kay*, ____ Md. App. ___ (No. 2836, Sept. Term., 2009), managing members of LLCs owe common law fiduciary duties to the LLC and to the other members.

The Senate deleted proposed section 4A-402.1 in its entirety. *See* Senate Judicial Proceedings Committee Floor Report, Committee Amendments, Amendment No. 2. The House concurred with the Senate Amendments and the bill was enacted without proposed Section 4A-402.1. *See* 2011 Md. Laws ch. 597. There have been no legislative amendments that alter the holding in *Wasserman* that managing members owe common law fiduciary duties to the LLC and to the other members, which we adopt.

18

breach of fiduciary duty cause of action, and if so, whether there are any parameters or limitations on such a cause of action. To answer the certified questions, we start with our review and analysis of the seminal breach of fiduciary duty case in Maryland, *Kann v. Kann*, 344 Md. 689 (1997). We also review our case law that interpreted or discussed *Kann*, as well as cases decided by this Court that did not discuss or cite to *Kann*, but that otherwise considered or discussed breach of fiduciary duty claims. Most of the reported discussion of whether *Kann* permits an independent cause of action has taken place in the Court of Special Appeals and in the United States District Court for the District of Maryland.

### 1. *Kann v. Kann*

In *Kann*, an individual was the trustee of two different trusts. 344 Md. at 694. In his capacity as trustee of one of those trusts, he filed a complaint for declaratory judgment, seeking a declaration as to the proper ownership of disputed funds held by the other trust. *Id.* at 695. The complaint named a beneficiary of the second trust as a defendant. *Id.* The beneficiary filed a counterclaim against the trustee alleging, among other things, breach of fiduciary duty. *Id.* at 695–96. The beneficiary sought compensatory damages against the trustee individually and asked for a jury trial on that claim. *Id.* The trial court dismissed the beneficiary's counterclaim, thereby denying her a jury trial on the breach of fiduciary duty claim, and issued a declaratory judgment ruling, finding, among other things, that the trustee had not breached any fiduciary duties. *Id.* at 697.

On appeal, the issue before this Court was whether a beneficiary of a trust could assert a common law claim for breach of fiduciary duty against a trustee, with a right to a

19

jury trial and noneconomic and punitive damages. *Id.* 697–98. In concluding that a beneficiary could not assert such a claim, we observed that all of the beneficiary's claims were brought in her capacity as a beneficiary of the trust, that disputes concerning trusts have traditionally fallen within the court's equitable jurisdiction, and that jury trials have not been available for such claims. *Id.* at 702–03. As a result, we concluded that under existing Maryland law, the beneficiary "was not entitled to a jury trial." *Id.* at 706.

We then turned to the beneficiary's argument that the Court should "substantially alter existing Maryland law by declaring that a breach of any fiduciary duty constitutes a tort in the sense that it would be actionable at law, triable to a jury, and, in appropriate cases, capable of supporting punitive damages." *Id.*

As part of our analysis, we looked to § 874 of the Restatement (Second) of Torts (1977), titled "Violation of Fiduciary Duty," which provides "[o]ne standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." *Kann*, 344 Md. at 706. We concluded that § 874 "does not mean that the American Law Institute recognizes that any breach of fiduciary duty is triable to a jury." *Id.* at 707. The Court observed that the comments to § 874 describe that the remedy for a breach is dependent upon the local rules of procedure, the type of relationship between the parties, the nature of the transaction involved, and the remedy traditionally afforded. *Id.* We concluded that § 874 "recognizes the universal proposition that a breach of fiduciary duty is a civil wrong, but the remedy is not the same for any breach by every type of fiduciary." *Id.* at 710. Thus, remedy for some breaches "may be at law, for others it may be exclusively in equity, and for still others there may be concurrent remedies." *Id.*

20

We rejected the beneficiary's request for the Court to "make a very far reaching change in Maryland law by creating a tort that will apply to *all fiduciaries*[,]" which would eliminate the distinctions between remedies at law and those remedies traditionally lying exclusively in equity. *Id.* at 712 (emphasis in original).

Rejecting the "wholesale changes in Maryland law" advocated by the beneficiary, we held that "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries." *Id.* at 713. We added, however, that "*[t]his does not mean that there is no claim or cause of action available for breach of fiduciary duty.*" *Id.* (emphasis added). Writing for the Court, Judge Rodowsky proceeded to instruct the courts and litigants on how to determine whether a party could assert a claim involving a breach of fiduciary duty:

> Our holding means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion. Counsel are required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem. Whether the cause or causes of action selected carry the right to a jury trial will have to be determined by an historical analysis.

*Id.* at 713. The Court reiterated that attorneys "do not have available for use in any and all cases a unisex action, triable to a jury." *Id.* We explained that just as we "would not preside over the death of contract by recognizing as a tort a breach of contract that was found to be in bad faith[,]" we similarly would not "preside over the death of equity" by adopting a universal tort for breach of fiduciary duty. *Id.* (citations omitted).

21

## 2. *Our Jurisprudence Involving Breach of Fiduciary Duty Claims Post-*Kann

Since *Kann* was decided, it has been cited ten times in our decisions,[9] but only two cases provide explanation or discussion concerning whether Maryland recognizes an independent cause of action for breach of fiduciary duty.

In *Insurance Company of North America v. Miller*, an insurance company filed a complaint against one of its insurance agents, alleging several causes of action, including conversion, breach of fiduciary duty, and negligence. 362 Md. 361, 363–64 (2001). The agent was involved in a "complex double financing scheme[,]" with a third-party agency, which involved, among other things, collecting premiums from the insurance company's insureds, diverting the funds and using them to pay premiums due to other companies on completely unrelated transactions, all in violation of Maryland insurance regulations. *Id.* at 364–66. During the trial, the defendant agent's counsel had stipulated that the defendant was the company's agent, and the parties had agreed that the amount of money owed to the company by the third-party agency (which had collapsed and was no longer in business), was close to $600,000. *Id.* at 372–73. The agent also admitted: (1) that he had knowledge of the financing scheme; (2) that he did not advise the insurance company or the Maryland Insurance Administration that the collected premiums had been placed in an account that

---

[9] *Bontempo v. Lare*, 444 Md. 344 (2015); *Scarfield v. Muntjan*, 444 Md. 264 (2015); *Green v. Nassif*, 426 Md. 258 (2012); *BAA, PLC v. Acacia Mut. Life Ins. Co.*, 400 Md. 136 (2007); *Legum v. Brown*, 395 Md. 135 (2006); *Ver Brycke v. Ver Brycke*, 379 Md. 669 (2004); *Int'l Bhd. of Teamsters v. Willis Corroon Corp. of Md.*, 369 Md. 724 (2002); *Beyer v. Morgan State Univ.*, 369 Md. 335 (2002); *Ins. Co. of N. Am. v. Miller*, 362 Md. 361 (2001); *Hartlove v. Md. School for the Blind*, 344 Md. 720 (1997).

was held "out-of-trust" in violation of Maryland insurance regulations; and (3) that he participated in the scheme with the third-party agency. *Id.* at 372.

After a bench trial, the circuit court entered judgment in favor of the agent on all counts. *Id.* at 363–64. The insurance company appealed the issue of whether the trial court erred in entering judgment in favor of the agent on the breach of fiduciary duty count and the negligence count. *Id.* at 364. This Court held that the trial court erred on both counts. *Id.* With respect to the breach of fiduciary duty count, we considered the evidence presented at trial under our own application of the *Kann* factors stating:

> Contrary to the trial court's ruling, we hold that appellant: (1) identified the particular principal-agent fiduciary relationship created in the case at bar; (2) identified that it was breached by appellee participating in the double financing scheme, not forwarding premiums, and not informing [the insurance company] that premiums were out-of-trust; (3) considered the remedies available; and (4) selected those remedies appropriate to the client's problem.

*Id.* at 379. We identified a fiduciary relationship between the insurance company and agent arising under principles of agency. *Id.* at 379–81. After discussing at length the duties owed by an agent to a principal, including the duty of loyalty and duty to disclose information material to the agency, we pointed out that under our existing case law, damages were available for the breach in the form of lost profits. *Id.* at 381 (citations omitted). We described the evidence in the record specifically demonstrating the agent's knowledge and participation in the scheme, which caused damages to the company. *Id.* at 383–85. We concluded that the trial court erred entering judgment in favor of the agent on the breach of fiduciary duty count. *Id.* at 384–85.

23

After considering the insurance company's breach of fiduciary duty claim, separately, we also considered the company's negligence claim based upon the same conduct and held that the agent's actions could also constitute negligence. *Id.* at 385–87. We reversed and remanded the case for "further proceedings consistent with this opinion, including the assessment and rendering of judgment as to damages[]." *Id*. at 388.

The Court's next citation to *Kann* came 18 months after *Miller*, in *International Brotherhood of Teamsters v. Willis Corroon Corp. of Maryland*, 369 Md. 724 (2002). In that case, a labor organization was required under federal law to bond its officials who handled funds in order to provide protection against loss by reason of fraud or dishonesty. *Id.* at 726. The labor organization retained an insurance broker to obtain the federally mandated insurance. *Id.* Unbeknownst to the labor organization, the insurance broker procured an insurance policy limiting the insurer's liability "per loss," not "per person" as federal law mandated. *Id.* After two of the labor organization's officials covered by the policy misappropriated funds, the organization made a claim on its policy "per person," but when the insurance company resisted, the labor organization settled and reserved "any claim that it might have against any insurance broker involved in the procurement of the policy." *Id.* at 727. Subsequently, the labor organization filed a claim against the insurance broker for negligence and breach of fiduciary duty connected with the broker's procurement of the insurance policy. *Id.* The complaint sought compensatory damages, plus interest, recovery of commissions paid to the broker, and attorneys' fees. *Id.* at 727–28. The insurance broker answered the complaint and moved for summary judgment on the ground that, by not reading the insurance policy and discovering, at the outset, the

24

contractual limitation of liability contained in the policy, the labor organization was contributorily negligent. *Id.* at 728. The circuit court agreed with the insurance broker's argument that the labor organization was contributorily negligent as a matter of law and granted summary judgment in favor of the insurance broker. *Id.*

Prior to arguments in the Court of Special Appeals, we granted *certiorari*, on our own initiative, to review that judgment. *Id.* The sole focus of our analysis was whether the circuit court erred in entering summary judgment on the issue of contributory negligence under the facts of the case. *Id.* at 737–41. We determined that the reasonableness of an insured's conduct "normally will be fact-specific" and therefore, is "for the trier of fact to determine." *Id.* at 740. Based upon the record, we reversed the judgment of the circuit court on the basis that "a jury could reasonably find that [the labor organization] acted reasonably in relying on [the insurance broker] to procure a proper policy and in not making its own independent investigation." *Id.* at 741.

Although the Court mentioned that the labor organization had pleaded a count alleging breach of fiduciary duty in addition to the negligence claim, the breach of fiduciary duty count was not part of this Court's discussion or analysis, other than a footnote "point[ing] out" that, based on *Kann*, "Maryland does not recognize a separate tort action for breach of fiduciary duty." *Id.* at 727 n.1. The Court continued stating, "[b]ased on the underlying averments, [the labor organization] may have been able to plead an action for breach of contract, in addition to its claim for negligence, but it chose not to do so. We shall treat the complaint as one for negligence." *Id.* Accordingly, the Court reviewed the lower court's grant of summary judgment on the negligence claim and reversed the circuit

25

court's erroneous conclusion that the labor organization was contributory negligent. *Id.* at 741. Beyond the footnote, the Court did not address the possibility of a fiduciary duty or the alleged breach.

Other decisions of this Court have addressed claims for breach of fiduciary duty without noting or discussing *Kann.* In *Della Ratta v. Larkin*, the Court considered a claim by limited partners against the sole general partner seeking dissolution of the partnership and an injunction barring capital calls. 382 Md. 553, 557 (2004). The limited partners alleged that the general partner breached his fiduciary duty and acted in bad faith. *Id.* The Court affirmed the circuit court's determination that the general partner had breached his fiduciary duty and acted in bad faith and, therefore, affirmed the circuit court's injunction against the capital call. *Id.* at 580. Although the Court did not discuss *Kann*, we upheld the circuit's court's injunction based upon a breach of fiduciary claim arising from the partnership relationship. *Id.*

In *Storetrax.com, Inc. v. Gurland*, the Court considered a breach of fiduciary duty claim filed by a corporation against a former employee and director of the corporation. 397 Md. 37, 42 (2007). In that case, a director brought a breach of contract action against the employer corporation seeking payment of a severance package. *Id.* at 45. He obtained a default judgment against the corporation and enforced the judgment by attaching the corporation's bank account. *Id.* at 46. After the director refused to voluntarily relinquish the default judgment upon the corporation's request, the corporation sued, arguing that the director breached his fiduciary duty to the corporation. *Id.* at 46–47. We held that the director did not breach his fiduciary duty by obtaining a judgment against the corporation

26

and enforcing the writ of garnishment against the corporate bank account. *Id.* at 67. The Court did not address the validity of a cause of action for breach of fiduciary duty. Instead, the Court's focus was on whether there was a breach of a fiduciary duty.

In *Clancy v. King*, the Court considered a breach of fiduciary duty claim against author Thomas Clancy by Wanda King, his former wife and partner in a partnership of which Mr. Clancy was the managing partner. 405 Md. 541, 546 (2008). Ms. King filed a lawsuit claiming both a breach of fiduciary duty and a breach of the partnership agreement between herself and Mr. Clancy, alleging that Mr. Clancy, as managing partner, breached his fiduciary duty to the limited partnership and to Ms. King by planning to remove his name from a book series, the profits of which were to be split between the limited partnership and an unrelated corporation. *Id.* at 550–51. Ms. King sought injunctive relief to prohibit Mr. Clancy from taking actions detrimental to the book series, naming Ms. King as managing partner, and she also sought recovery of attorneys' fees and expenses. *Id.* Mr. Clancy filed a counterclaim seeking a declaratory judgment that his fiduciary duties were established by contract, specifically, the partnership agreement, which expressly limited the duty of loyalty ordinarily owed by the managing partner to the partnership and the partners. *Id.* at 551. The trial court found that Mr. Clancy had breached his fiduciary duty and awarded Ms. King damages, which was affirmed by the Court of Special Appeals. *Id.* at 553.

Concerning the breach of fiduciary duty count, the question presented on *certiorari* to this Court was "[w]hether the lower courts erred in failing to recognize that principles of contract preempt fiduciary duties where the contract is unambiguous and the parties have

27

made their intentions clear?" *Id.* at 553. This Court answered in the affirmative and reversed the trial court. *Id.* at 572. We held that Mr. Clancy's fiduciary duties were established by the partnership agreement, which expressly limited the duty of loyalty ordinarily owed by the managing partner to the partnership. *Id.* at 557. However, we observed that Mr. Clancy, nonetheless, had a requirement to act in good faith under contract law, as well as partnership law. *Id.* at 565–71. We reversed the judgment and remanded for the trial court to determine whether Mr. Clancy's actions were undertaken in good faith. *Id.* at 571–73. In other words, although the Court concluded that the circuit court erred in failing to consider Mr. Clancy's fiduciary duties through the modifications and limitations agreed upon by the parties in the partnership agreement, the Court nonetheless remanded the case on Ms. King's breach of duty count for further factual proceedings on the issue of whether Mr. Clancy's actions were undertaken in good faith. *Id.*

In *Shenker v. Laureate Education, Inc.*, this Court addressed the issue of whether shareholders in a corporation could bring a claim for breach of fiduciary duties against some of its directors. 411 Md. 317, 326–27 (2009). In connection with this issue, the Court considered (1) whether the directors owed common law fiduciary duties to the shareholders of the corporation, or alternatively, whether their fiduciary duties were exclusively provided by statute; and (2) whether the shareholders were permitted to bring breach of fiduciary duty claims individually or only as derivative claims. *Id.* at 327, 347–51. We held that the statute governing corporate director duties, CA § 2-405.1(a), does not supersede common law duties owed by corporate directors to their shareholders that pre-existed the adoption of the statute. *Id.* at 341. We explained that, under the common law,

28

in situations where the corporation was undergoing a change of control, "corporate directors owe their shareholders fiduciary duties of candor and maximization of shareholder value." *Id.* Accordingly, we held that, in the context of a cash-out merger transaction where the decision to sell the corporation had already been made, "shareholders may pursue direct claims against directors for breach of their fiduciary duties of candor and maximization of shareholder value." *Id.* at 342. In analyzing the shareholders' right to bring a direct action for breach of fiduciary duty, we also recognized that "the injury alleged, namely, a lesser value that shareholders received for their shares in the cash-out merger, is an injury suffered solely by the shareholders and not by [the corporation] as a corporate entity." *Id.* at 346.

As part of their case, the shareholders also brought a claim for civil conspiracy against the investors in the corporation who purchased shares as part of the cash-out merger. *Id.* at 329. This Court affirmed the circuit court's dismissal of the shareholder's conspiracy claim on the ground that the investors "did not owe fiduciary duties to [the shareholders] and were consequently legally incapable of committing the underlying tort." *Id.* at 351 (internal citations omitted). In affirming the lower court's dismissal of the civil conspiracy claim, in a footnote, we stated that we "assume, without deciding that it is so solely for the purposes of this appeal, that breach of fiduciary duties is a cognizable tort in Maryland." *Id.* at 351 n.16. The placement of this footnote is significant in that it appears within the context of our discussion of the conspiracy claim against the investors, where there was no underlying fiduciary duty owed to the shareholders.

29

To summarize our jurisprudence involving breach of fiduciary duty claims in the aftermath of *Kann*, this Court upheld specific claims for specific breaches of fiduciary duties in the following contexts: *Miller*, 362 Md. at 387–88 (permitting an insurer to assert a breach of fiduciary duty claim for damages against an agent under agency principles); *Della Ratta*, 382 Md. at 557 (affirming a circuit court's factual findings that a general partner had "breached his fiduciary duty and acted in bad faith" and upholding the circuit court's injunctive relief); *Clancy*, 405 Md. at 565–72 (remanding for determination of whether the managing partner of a limited partnership had breached his fiduciary duty of good faith and fair dealing); and *Shenker*, 411 Md. at 351 (holding that in a cash-out merger transaction, where the decision to sell the corporation had already been made, that shareholders could pursue direct claims against directors for their breach of common-law fiduciary duties of candor and maximization of shareholder value). These cases demonstrate that we have recognized independent claims for breach of fiduciary duty in various contexts. In *Miller* and *Shenker*, we applied a *Kann* analysis, describing the fiduciary relationship, and identifying a remedy that provided for damages arising out of the common law in each instance. Additionally, in *Miller*, we reversed and remanded for a consideration of the plaintiff's breach of fiduciary duty count notwithstanding the fact that the plaintiff had another cause of action alleging negligence that addressed the same conduct.

Despite the above case law to the contrary, our case law became less than clear when we "pointed out" in a footnote that under *Kann*, "although the breach of a fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not

recognize a separate tort action for breach of fiduciary duty." *Int'l Bhd. of Teamsters*, 369 Md. at 727 n.1. Later, in *Shenker*, we stated that we were "assum[ing] . . . solely for the purposes of this appeal, that breach of fiduciary duties is a cognizable tort in Maryland." *Shenker*, 411 Md. at 351 n.16. These footnotes created problems for courts attempting to understand *Kann* and to follow the outlined analysis.

### 3. *Kann's Progeny in the Court of Special Appeals*

Understandably, the Court of Special Appeals' cases interpreting *Kann* have not always been consistent.[10] As the Court of Special Appeals noted in its Certification, the intermediate appellate court has "held in some cases that there is no stand-alone claim for breach of fiduciary duty; in others that such a cause of action may exist, but only for equitable relief; and yet in others that such a cause of action may exist, without necessarily restricting the type of relief available." We examine these cases below.

In *Moshyedi v. Council of Unit Owners of Annapolis Road Medical Center Condominium*, a condominium unit owner sued the unit council, seeking declaratory relief and damages for the unit council's alleged failure to repair his condominium unit with insurance proceeds that had been paid to the unit council for the purpose of repairing damaged units. 132 Md. App. 184, 187–88 (2000). The unit owner argued that under the

---

[10] We have not included within our survey all cases that cite to *Kann v. Kann*, 344 Md. 689 (1997), but only those cases that discuss whether an independent cause of action exists, and the circumstances in which the Court applied the factors or analysis in *Kann.* For example, our survey does not include *Lyon v. Campbell*, 120 Md. App. 412 (1998), where the court held that there was insufficient evidence to support a breach of fiduciary duty claim "even if we assume without holding" that a shareholder owed the corporation a fiduciary duty. *Id.* at 441.

Maryland Condominium Act, a fiduciary relationship existed between the unit council and him, that the council breached that duty by failing to make repairs, and that he was entitled to damages. *Id.* at 191. In a separate case, the unit council filed a complaint for past-due condominium fees. *Id.* at 188. The cases were consolidated for trial. *Id.* Although both parties prayed a jury trial, the jury only considered the unit council's claim against the unit owner for past-due fees. *Id.* at 190. The jury returned a verdict in favor of the unit council for the past-due condominium fees. *Id.* After the jury returned its verdict, the trial court entered judgment in favor of the unit council on the unit owner's claim for compensatory damages. *Id.* On appeal, the issue was whether the jury should have considered the unit owner's claim for compensatory damages. *Id.* at 190–91.

The Court of Special Appeals rejected the unit council's argument that Maryland does not recognize a cause of action for breach of fiduciary duty, and explained under *Kann*, although "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries[,]" the parties and the court are required to undertake the analysis outlined in *Kann* to "identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem." *Id.* at 193 (quoting *Kann*, 344 Md. at 713). The intermediate appellate court analyzed the unit owner's claim and determined that the circuit court did not err in treating the claim as one in equity rather than at law. *Id.* at 196. The court further concluded that under the by-laws, the unit council had a duty to make the necessary repairs from the insurance proceeds paid for that purpose, and that the unit owner had expended his own funds to repair the unit. *Id.* at 206. The court vacated the judgment

and remanded the case to the circuit court for further findings of fact on the issue of the total amount expended by the unit owner on the repairs and the amount of the excess insurance proceeds remaining in the unit council's trust account dedicated to the repairs on the owner's unit. *Id.* at 206–07.

In *Garcia v. Foulger Pratt Development, Inc.*, the defendant owners of partnership interests in a limited partnership sought attorneys' fees and costs under Maryland Rule 1-341, against the plaintiff general partner, for maintaining a proceeding in "bad faith or without substantial justification." 155 Md. App. 634, 678 (2003). To support its attorneys' fees claim, one of the defendants' arguments was that the "'law *is* clear' in Maryland, that an independent cause of action for breach of fiduciary duty is not recognized if the allegations are duplicative of a breach of a contract claim." *Id.* at 682 (emphasis in original). The Court of Special Appeals rejected the defendant's interpretation of *Kann*, and instead concluded that "the Court of Appeals held that the analysis must be done on a case-by-case basis[,]" observing that following *Kann*, "the Court of Appeals recognized breach of fiduciary duty as a viable cause of action in [*Miller*]." *Id.*

Two years after *Garcia*, relying on this Court's footnote in *International Brotherhood of Teamsters*, 369 Md. at 727 n.1, discussed *supra*, the Court of Special Appeals changed course, and held that a plaintiff's separate claims for breach of fiduciary duty and negligence "condense to only one: the claim based on the tort of negligence." *Vinogradova v. SunTrust Bank, Inc.*, 162 Md. App. 495, 510 (2005). The Court of Special Appeals described the footnote in *International Brotherhood of Teamsters* as this Court's "clarification of its *Kann* holding[.]" *Id.*

In *Lasater v. Guttmann*, the Court of Special Appeals considered whether there was a breach of fiduciary duty tort claim "for the violation by one spouse of an alleged fiduciary responsibility to the other spouse to properly use and maintain marital funds for the benefit of the marital unit." 194 Md. App. 431, 454 (2010). After quoting the relevant passage from *Kann*, the court explained that "the threshold question is whether any fiduciary duty could exist under the facts asserted, when the claimed fiduciary relationship was husband and wife." *Id.* Thus, the court did not reject the existence of an independent cause of action for breach of fiduciary duty outright, but instead analyzed whether the plaintiff had identified a fiduciary relationship that might give rise to such a cause of action, and concluded that under Maryland law, she had not. *Id.* at 466.

In 2011, the Court of Special Appeals decided two cases in which the court interpreted *Kann* as permitting independent breach of fiduciary claims, but only those seeking equitable, rather than legal, relief. In *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, the court considered claims by members of real estate trusts against, among others, the managing member of an LLC real estate trust, over losses of funds that had been invested with entities controlled by Bernie Madoff. 197 Md. App. 586, 592–93 (2011). The complaint alleged multiple counts including the breach of fiduciary duties for which the plaintiffs sought monetary damages. *Id.* at 600. Although the court concluded that "managing members of LLCs owe common law fiduciary duties to the LLC and to the other members," *id.* at 616, the court cited *Kann* as precluding claims for monetary damages for breach of those duties:

> *Kann* and its progeny do not obliterate the possibility of a separate cause of action for breach of fiduciary duty in an action seeking equitable relief. In a claim for monetary damages at law, however, an alleged breach of fiduciary duty may give rise to a cause of action, but it does not, standing alone, constitute a cause of action.

*Id.* at 631. Thus, although the same factual allegations supporting a claim for breach of fiduciary duty could support other causes of action for money damages, the intermediate appellate court held that "they do not constitute a stand alone nonduplicative cause of action." *Id.* at 631–32.

In *Latty v. St. Joseph's Society of Sacred Heart, Inc.*, the court considered claims brought by children of a church organist/Josephite priest against a religious society, alleging, among other things, breach of fiduciary duty, and seeking money damages. 198 Md. App. 254, 260 (2011). The Court of Special Appeals affirmed the circuit court's dismissal of the plaintiff's complaint in its entirety. *Id.* at 278. With respect to the breach of fiduciary duty count, the court explained that "[b]ecause the society had no fiduciary duty to appellants, there can be no cause of action for its breach." *Id.* at 271. The court offered an alternative ground for affirming the circuit court's rejection of a breach of fiduciary duty claim seeking money damages, stating that although "an action seeking equitable relief . . . may give rise to 'a separate cause of action for breach of fiduciary duty,' . . . a claim for monetary damages at law . . . does not constitute a separate cause of action." *Id.* (quoting *Wasserman*, 197 Md. App. at 631). Thus, the court held, "[w]hen monetary damages are sought, a claim or cause of action for breach of a fiduciary duty may be available, but only if the breach gives rise to another cause of action." *Latty*, 198 Md. App.

35

at 271 (citing *Kann*, 344 Md. at 713). Given that the appellants sought monetary damages and did not successfully plead another cause of action, the Court of Special Appeals affirmed the circuit court's dismissal of the claim. *Id.*

In *Catler v. Arent Fox, LLP*, the Court of Special Appeals followed its decision in *Wasserman* and held that the plaintiffs could not pursue a claim against their former attorneys for breach of fiduciary duty as an independent cause of action, but that "the remedy for such a breach may be connected to another cause of action," such as legal malpractice. 212 Md. App. 685, 717 (2013). The court concluded that Maryland law does not recognize a direct cause of action for breach of fiduciary duty, but it does "allow for recovery from the breach of fiduciary duty, but the breach must be coupled with a proper cause of action." *Id.* at 717 n.38 (citing *Int'l Bhd. of Teamsters*, 369 Md. at 727 n.1). Therefore, although the appellant could not succeed on a breach of fiduciary duty count, the breach could be connected to another cause of action. *Id.* at 717. The court proceeded to review the alleged breach of fiduciary duty in conjunction with the legal malpractice claim. *Id.*

### 4. Federal Courts' Discussion of Kann

Given the inconsistencies in Maryland's jurisprudence on this issue, federal judges also have been understandably inconsistent in their efforts to reconcile "a split of authority . . . as to whether the Court of Appeals rejected breach of fiduciary duty as an independent tort." *Froelich v. Erickson*, 96 F. Supp. 2d 507, 526 n.22 (D. Md. 2000). For example, in *Kerby v. Mortgage Funding Corp.*, as part of a 13-count complaint, the federal court considered a breach of fiduciary duty tort in the context of a class action arising out of an

alleged fraudulent mortgage refinancing scheme. 992 F. Supp. 787, 790 (D. Md. 1998). The court dismissed the claim because Maryland does not recognize a "'universal or omnibus tort for the redress of breach of fiduciary duty,' at least in a situation where other remedies exist[.]" *Id.* at 803 (quoting *Kann*, 344 Md. at 713). Another judge of that court concluded that "Maryland law is clear that there is no free-standing, independent tort for breach of fiduciary duty." *Stewart v. Balt. Teachers Union*, 243 F. Supp. 2d 377, 379 (D. Md. 2003) (citing *Kann*, 344 Md. at 713); *see also Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 801 (D. Md. 2002) (concluding that "there is no independent tort for breach of fiduciary duty in Maryland, especially in light of the multiple alternative remedies" available to the plaintiff).

*In re LandAmerica Financial Group, Inc.*, a bankruptcy trustee alleged a breach of fiduciary duty claim against a real estate underwriter and its Maryland subsidiary. 470 B.R. 759, 777 (Bankr. E.D. Va. 2012). Applying Maryland law to the subsidiary, the court disagreed with the subsidiary defendant's arguments that *Kann* precludes a tort claim for the breach of fiduciary duty. *Id.* at 794. Instead, the court summarized its understanding of the holding in *Kann*: "[W]hile no general 'omnibus tort for the breach of fiduciary duty' may exist, *Kann* contemplates tailored claims for a breach of fiduciary duty that are tied to discrete harms capable of being rectified by an appropriate remedy." *Id.* at 795 (cleaned up). The court explained that the claim was permissible because the fiduciary duty was well-established; the trustee asserted conduct constituting the breach; the breach resulted in actual, quantifiable economic losses; and the monetary damages sought can remedy the loss. *Id.*

37

In *BEP, Inc. v. Atkinson*, in considering a complaint filed by a corporation against a high-level management employee alleging breach of fiduciary duty, the court concluded that the plaintiff corporation "has, pursuant to *Kann*, properly asserted under Maryland law a claim of breach of fiduciary duty." 174 F. Supp. 2d 400, 405–06 (D. Md. 2001).

In *Adobe Systems Inc. v. Gardiner*, a federal court held that, although a plaintiff software company could not proceed with a broad claim for breach of fiduciary duty, it would proceed with claims alleging more specific breach of the fiduciary duties of loyalty and confidentiality. 300 F. Supp. 3d 718, 727 (D. Md. 2018). After reviewing what it found to be inconsistent treatment of the issue by Maryland's appellate courts, the federal district court concluded that, although *Kann* precludes recognition of an "omnibus" tort applicable to all fiduciaries, it read *Kann* as holding that such a claim may "be asserted if it involved an identified fiduciary relationship and an identified breach." *Id.* at 726. The court permitted the specific claims to proceed, finding that they were based on "specific breaches of specific fiduciary duties that have allegedly resulted in economic losses not otherwise redressable through separate causes of action." *Id*. at 726–27 (citing *Kann*, 344 Md. at 713).

5. *Other Discussion of Inconsistent Approaches to Breach of Fiduciary Duty Claims*

Discussion on the issue of whether Maryland recognizes an independent cause of action for breach of fiduciary duty, and the inconsistent interpretations of *Kann*, is not limited to judicial opinions. In *Pleading Causes of Action in Maryland*, the authors pose, but do not purport to answer, the question of whether Maryland recognizes an independent

cause of action for breach of fiduciary duty. Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland*, at 576–79 (6th Ed. 2018) ("Sandler"). Sandler comments on the tension between footnote 1 in *International Brotherhood of Teamsters*, 369 Md. at 727 n.1, and footnote 16 in *Shenker*, 411 Md. at 351 n. 16. After discussing the Court's analysis in *Kann*, Sandler observes that "*Kann* may be said to hold merely that not every claim for breach of fiduciary duty is a viable action at law for which a jury trial may be prayed." Sandler, at 578. In attempting to reconcile our jurisprudence, Sandler postulates that the footnotes in question may be dicta.

*Court of Specials Appeals' Certification to this Court*

As the Court of Special Appeals observed in its Certification, the various courts' interpretations of *Kann* appear to be grounded in differing interpretations of the passage that immediately follows the Court's holding that "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries[,]" which describes the analysis that litigants and the court should undertake on a case-by-case basis when considering a breach of fiduciary duty claim. *Kann*, 344 Md. at 713. In its Certification, the Court of Special Appeals describes three general interpretations of the passage.

*1. Interpretation Number One*

According to the Court of Special Appeals, the first interpretation is that a breach of fiduciary duty is actionable *only* if it gives rise to liability under a separate, independent cause of action, such as breach of contract or negligence. The Court of Special Appeals notes that cases adopting this interpretation have relied upon the footnote in *International*

39

*Brotherhood of Teamsters*, 369 Md. at 727 n.1. *See also Vinogradova*, 162 Md. App. at 510 (describing footnote 1 as this Court's "clarification of its *Kann* holding").

### 2. Interpretation Number Two

The Court of Special Appeals explains that under a second interpretation, a breach of fiduciary duty is actionable as an independent cause of action, but only if that is the most appropriate path after considering all other potential options. Under this interpretation, the *Kann* Court's instruction to counsel should be construed as identifying the factors that must be considered in determining whether there is another, more appropriate cause of action to the type of relationship and the breach identified. Stated differently, "whether the particular allegations of a breach of fiduciary duty are appropriately governed by a different cause of action is based on how such allegations have been treated historically." The Court of Special Appeals explains that "[d]epending on the result of that historical analysis[,] (1) a stand-alone cause of action for breach of fiduciary duty may be available[,] and (2) the relief available pursuant to such a cause of action may or may not be limited (i.e., as between equitable or monetary relief)." The Court of Special Appeals points out that the cases adopting this interpretation include *Miller*, 362 Md. 361; *Garcia*, 155 Md. App. 634; *Lasater*, 194 Md. App. 431; *In re LandAmerica Financial Group, Inc.*, 470 B.R. 759; and *Adobe Systems, Inc.*, 300 F. Supp. 3d 718.

### 3. Interpretation Number Three

The third interpretation, which the Court of Special Appeals describes in its Certification as a "tweak on the second, recognizes the possibility of a stand-alone cause of action for breach of fiduciary duty where there is no more appropriate cause of action

40

applicable to the conduct at issue, but only for equitable relief." The Court of Special Appeals observes that this interpretation appears to be "grounded in the Court's discussion in *Kann* of the historical limitation of remedies available for a breach of the duties owed by a trustee to a trust beneficiary, which is the specific context in which *Kann* arose." The Court of Special Appeals notes that cases adopting this interpretation include their cases— *Wasserman*, 197 Md. App. 586; *Latty*, 198 Md. App. 254; and *Moshyedi*, 132 Md. App. 184.

We consider each of the three interpretations of *Kann* below.

*The Ripple Effect – How Two Small Footnotes Caused Big Confusion*

Our sentence in *Kann*—"we hold that there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries"—has been over-simplified into an oft-repeated blanket assertion that "Maryland does not recognize a separate tort for breach of fiduciary duty." To be sure, this Court contributed to the over-simplification in *International Brotherhood of Teamsters* where, in an attempt at brevity, we "pointed out" that in *Kann*, "although the breach of fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty." 369 Md. at 727 n.1. We compounded the confusion in *Shenker*, when we stated in a footnote that "we assume, without deciding that . . . breach of fiduciary duties is a cognizable tort in Maryland." 411 Md. at 351 n.16. Reading these footnotes in isolation, one could either conclude that we do not recognize a separate tort for breach of fiduciary duty, *or* that it is an open-ended question.

Based upon our review of those cases, as well as our jurisprudence in which we specifically recognized a cause of action for breach of fiduciary duty, we conclude that these footnotes are dicta. "Admittedly, it is not always easy to distinguish between *dicta* and a holding. The distinction between a holding and *dicta*, while difficult to define, is also difficult to apply." *State v. Baby*, 404 Md. 220, 276 (2008) (Raker, J., concurring and dissenting) (citations omitted). There is "no real consensus on the correct definition" of dicta. Ryan S. Killian, *Dicta and the Rule of Law*, 2013 Pepp. L. Rev. 1, 7–8 (2013). Black's Dictionary defines "obiter dictum" (which is commonly shortened to "dictum") as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Obiter dictum*, Black's Law Dictionary 569 (11th ed. 2019). The Supreme Court has described a prior proposition of the Court as being "unquestionably dictum because it was not essential to our disposition of any of the issues contested" in the case. *Cent. Green Co. v. United States*, 531 U.S. 425, 431 (2001). This Court has previously explained that "[w]hen a question of law is raised properly by the issues in a case and the Court supplies a deliberate expression of its opinion upon that question, such opinion is not to be regarded as *obiter dictum*, although the final judgment in the case may be rooted in another point also raised by the record." *Schmidt v. Prince George's Hosp.*, 366 Md. 535, 551 (2001) (citations omitted). A matter is not dictum if "the question was directly involved in the issues of law . . . and the mind of the Court was directly drawn to, and distinctly expressed upon the subject." *Id.* at 552 (citations omitted).

Applying these definitions and principles to the footnote in question in *International Brotherhood of Teamsters*, 369 Md. at 727 n.1, and *Shenker*, 411 Md. at 351 n.16, leads to the conclusion that the language in both footnotes is clearly dicta. In *International Brotherhood of Teamsters*, the issue of whether Maryland recognized an independent cause of action for breach of fiduciary duty was not directly involved in the issues of law raised on appeal, nor did the Court supply a "deliberate expression of opinion" on the issue. We did not discuss or analyze the breach of fiduciary duty count, and our entire analysis concerned whether the circuit court erred in granting summary judgment on whether the insured was contributorily negligent in failing to read the insurance policy. *Int'l Bhd. of Teamsters,* 369 Md. at 737–41. In context, we view the footnote as the Court's attempt to briefly describe why it was not considering the breach of fiduciary count any further. In doing so, the Court oversimplified our holding in *Kann*.

With respect to the footnote in *Shenker*, as discussed above, we considered two separate fiduciary claims in that case. 411 Md. at 327, 347. On the shareholder's breach of fiduciary duty claim against the directors, the Court undertook a *Kann*-type analysis and held that the shareholders were entitled to "pursue *direct claims* against directors for *breach of fiduciary duties* of candor and maximization of shareholder value." *Id.* at 336–42. (emphasis added). We repeated our holding in this opinion several times in several places. *See id.* at 351, 354. Footnote 16, which appears to leave open-ended the question of whether "breach of fiduciary duty is a cognizable tort in Maryland[,]" was placed in the section of the opinion discussing the shareholders' civil conspiracy claim against the investors, where we found no fiduciary relationship. *Id.* at 351 n.16. We can certainly

43

understand how this footnote, in isolation, could create confusion. But given our holding, in which we restated three times in the body of the opinion, that the shareholders *could* pursue a direct cause of action for breach of fiduciary duty against the directors for damages under the facts of the case, the language in the footnote is not controlling.

*Rejection of Interpretation Numbers 1 and 3*

We reject the first interpretation of *Kann* suggested in the Certification that "a breach of fiduciary duty is actionable *only* if it gives rise to liability under a separate, independent cause of action, such as breach of contract or negligence." (emphasis in original). This interpretation arises out of our footnote in *International Brotherhood of Teamsters*, which, as noted above, we consider dicta. The footnote has been relied upon and carried through various opinions in the intermediate appellate court and federal courts attempting to apply our common law concerning fiduciary duties, causing a ripple effect. "The most banal use of dicta may also be the most pernicious. In some cases, dicta is cited as law with no apparent realization by the judge that the adversarial process has played no significant role in producing a rule based on reason and adequately considered precedent." Killian, *supra,* at 15–16. Such an interpretation is directly at odds with our case law where we have specifically upheld separate claims for breach of fiduciary duty in specific situations. *See Shenker*, 411 Md. at 351; *Clancy*, 405 Md. at 565–72; *Della Ratta*, 382 Md. at 557; *Miller*, 362 Md. at 387–88.

Taking the interpretations out of order, we also reject the third interpretation of *Kann*, which recognizes the possibility of a cause of action for breach of fiduciary duty where there is no more appropriate cause of action applicable to the conduct at issue, but

44

only for equitable relief. This is the interpretation initially adopted by the Court of Special Appeals in *Wasserman*, 197 Md. App. at 631–32, and then restated in *Latty*, 198 Md. App. at 271, and *Moshyedi,* 132 Md. App. at 196. This interpretation is inconsistent with our cases cited above and interprets *Kann* too narrowly. When examining the language in *Kann*, it is necessary to keep in mind the context and facts. *Kann* involved the attempt by a beneficiary of a trust to maintain a common law claim for breach of fiduciary duty, with a right to a jury trial and noneconomic and punitive damages, against the trustee. 344 Md. at 696–97. The Court analyzed the beneficiary's asserted claim within the traditional and historic context of claims by beneficiaries against trustees, and explained that by statute, trusts are subject to the "general superintending power" of a "court having equity jurisdiction." *Id.* at 713 (cleaned up and citations omitted). We rejected the beneficiary's argument for "wholesale changes in Maryland law" and refused to "preside over the death of equity" by adopting her contentions. *Id.* at 713–14. Given the nature of the type of fiduciary relationship at issue in that case, and our analysis of the remedies traditionally available in equity as defined by statute, the beneficiary's remedies were limited to whatever rights she had in equity.

To interpret *Kann* in a manner to suggest that, in *any* case alleging a breach of fiduciary duty, *regardless of the type of fiduciary relationship*, an independent cause of action can only be pursued where the plaintiff is seeking equitable relief, is too constrictive and does not take into account various other types of fiduciary relationships and the relief traditionally associated with claims based on those specific relationships.

45

*Breach of Fiduciary Duty Claim as an Independent Cause of Action in Maryland*

We hold that under *Kann*, and our jurisprudence that followed, a breach of fiduciary duty may be actionable as an independent cause of action. The type of relief that is available will be determined by the historical remedies provided by statute, common law, or by contract. We explain.

Prior to his appointment to the bench, Judge Kevin Arthur perhaps best summarized the confusion arising from *Kann* in an article published in the Federal Bar Association Newsletter, explaining that in his view,

> the conflict and confusion have come about because courts and litigants are asking the wrong question. It is incorrect, and potentially misleading, to ask whether Maryland recognizes "a" cause of action for breach of fiduciary duty. This is because Maryland does not have a single, discrete cause of action for all breaches of fiduciary duties; instead, it has several (perhaps even many) different causes of action, with different essential characteristics, depending upon the nature of the fiduciary relationship in question and the remedies that historically have been available to address a breach of that fiduciary relationship.

Kevin F. Arthur, *Breach of Fiduciary Duty: a Cause of Action in Maryland?*, Federal Bar Association Maryland Chapter Newsletter (March 2013). We agree with this apt description of *Kann.*

As is borne out by our survey of the case law, fiduciary relationships can be created by common law, by statute, or by contract, and can have different characteristics. "Well-known examples of habitual or categorical fiduciary relationships include those between trustees and beneficiaries, agents and principals, directors and corporations, lawyers and clients, and guardians and wards, as well as the relationship among partners." Deborah A.

46

DeMott, *Relationships of Trust and Confidence in the Workplace*, 100 Cornell L. Rev. 1255, 1261 (2015). For this reason, there is no "one-size fits all" breach of fiduciary tort that encompasses all types of relationships. In other words, "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries." *Kann*, 344 Md. at 713.

As Judge Rodowsky correctly observed in *Kann*, although "a breach of fiduciary duty is a civil wrong, [] the remedy is not the same for any breach by every type of fiduciary." *Id.* at 710. Or put another way, not every claim for breach of fiduciary duty is a viable action at law for which a jury trial may be prayed. "For some breaches the remedy may be at law, for others it may be exclusively in equity, and for still others there may be concurrent remedies." *Id.* A breach of fiduciary duty may be actionable as an independent cause of action, but not every breach of fiduciary claim will entitle the plaintiff to damages at law, and the right to a trial by jury.

To establish a breach of fiduciary duty as an independent cause of action, a plaintiff must show: "(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary." *Froelich*, 96 F. Supp. 2d at 526 (citing *Lyon v. Campbell*, 120 Md. App. 412, 439 (1998)) (applying Maryland law, under the assumption that Maryland recognizes an independent cause of action). The remedy for a breach is dependent upon the type of fiduciary relationship, and the remedies provided by law, whether by statute, common law, or contract. Under our *Kann* analysis, a court should consider the nature of the fiduciary relationship and possible remedies afforded for a breach, on a case-by-case basis. If a plaintiff describes a fiduciary

relationship, identifies a breach, and requests a remedy historically recognized by statute, contract, or common law applicable to the specific type of fiduciary relationship and the specific breach is alleged, a court should permit the count to proceed. The cause of action may be pleaded without limitation as to whether there is another viable cause of action to address the same conduct. This is consistent with our pleadings practice as established by the Maryland Rules. *See* Maryland Rule 2-303(c).[11]  Of course, this does not mean that every breach will sound in tort, with an attendant right to a jury trial and monetary damages. The remedy will be dependent upon the specific law applicable to the specific fiduciary relationship at issue.

For example, in *Kann*, although we rejected the beneficiary's attempt to pursue remedies at law, with a right to a jury trial and potential punitive damages where proven, we made clear that the beneficiary nonetheless had equitable remedies. 344 Md. at 711–12. In other contexts, the Court has analyzed the fiduciary relationship and included that damages *were* available under the traditional common law remedies associated with a breach. *See Shenker*, 411 Md. at 345; *Miller*, 362 Md. at 381. As we noted in more detail above, in some cases, the intermediate appellate court and the federal courts have

---

[11] Maryland Rule 2-303(c) provides that:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has, regardless of consistency and whether based on legal or equitable grounds.

successfully applied our *Kann* analysis in the same manner.  *See, e.g., Adobe Sys. Inc.*, 300

F. Supp. 3d at 727; *BEP, Inc.*, 174 F. Supp. 2d at 405–06; *In re LandAmerica Fin. Grp.,*

*Inc.*, 470 B.R. at 794; *Lasater*, 194 Md. App. at 454.

*Our Recognition of a Cause of Action for Breach of Fiduciary Duty is Consistent*
*with the Third Restatement*

In *Kann*, we looked at the Restatement (Second) of Torts § 874 (1979), including

the comments, and concluded that § 874 "recognizes the universal proposition that a breach

of a fiduciary duty is a civil wrong, but the remedy is not the same for any breach by every

type of fiduciary."  *Kann*, 344 Md. at 710.

In May 2018, the American Law Institute ("ALI") approved the Restatement of the

Law Third, Torts: Liability for Economic Harm.[12]  In § 16 of the Third Restatement, titled

"Breach of Fiduciary Duty," the ALI states that "[a]n actor who breaches a fiduciary duty

is subject to liability to the person to whom the duty was owed."  Restatement (Third) of

Torts: Liab. For Econ. Harm § 16 (Am. Law Inst. 2020) ("Third Restatement").[13]  Like the

language in the Second Restatement, the Third Restatement's articulation of "Breach of

Fiduciary Duty," consists of one short sentence.  The brevity and simplicity of the sentence

belies the complexity of the topic.

---

[12] The American Law Institute ("ALI") approved Restatement of the Law Third, Torts: Liability for Economic Harm, on May 21, 2018.  Pauline Toboulidis, *Restatement of the Law Third, Torts: Liability for Economic Harm Approved*, The ALI Adviser (May 21, 2018), https://perma.cc/QJT2-87LV.

[13] Section 16 of the Third Restatement of Torts: Liability for Economic Harm is a successor to the Restatement (Second) Torts § 874 (1979).  Restatement (Third) of Torts: Liab. for Econ. Harm § 16 note a (Am. Law Inst. 2020).

As the comments explain, "[a] fiduciary duty is, in general, a duty to act for the benefit of another on matters within the scope of the parties' relationship." Third Restatement, § 16 cmt. a. Despite this general duty, the comments to the Third Restatement recognize that there are different types of fiduciary relationships with different types of characteristics:

> Some fiduciary relationships arise as a matter of law, such as the relation between attorney and client, between principal and agent, or between a trustee and the beneficiary of a trust. They may also arise from the terms of a contract or from less formal dealings that create the elements of such a relationship.

*Id.* Accordingly, although a fiduciary relationship will have "general responsibilities that are common to all settings[,]" such as a duty of loyalty, and an obligation to avoid self-dealing and conflicts of interest, a fiduciary will also have "specific obligations that vary from one circumstance to the next . . . ." *Id.* "The details of these [fiduciary] principles depend . . . on the precise relationship between the parties and on the surrounding law." *Id.* For example, "[t]he particular obligations of a trustee . . . are defined by the law of trusts. The obligations of an agent are matters for the law of agency. The obligations of fiduciaries in many settings are further specified by statute." *Id.*

Comment b to § 16 explains that there may be different remedies for a breach of fiduciary duty arising from the type of fiduciary relationship in question: "The fiduciary duty may be defined by a body of law that also provides particular and specialized remedies when the duty is breached. *This Section is not intended to displace those rules and remedies where they exist*." Third Restatement, § 16 cmt. b (emphasis added). The Third

50

Restatement's articulation of Breach of Fiduciary Duty is consistent with our analysis in *Kann.*

*The Minority Members' Breach of Fiduciary Count in this Case*

Having answered the certified questions, we turn to whether the trial court correctly applied Maryland law, and correctly entered judgment in favor of Mr. Cherneski on the breach of fiduciary duty count. The Minority Members allege that the circuit court erred by concluding that under *Kann*, no independent cause of action exists for breach of fiduciary duty. Second, the Minority Members argue that even if the circuit court considered the breach of fiduciary duty count as a separate cause of action, the circuit court erred by finding that "there is insufficient evidence to show that there has been a breach of fiduciary duty," and by failing to award separate, preventative equitable relief for breaches of fiduciary duties, which they contend do not overlap with other causes of action. We examine the Minority Members' contentions below.

    1. *The Trial Court's Resolution of the Breach of Fiduciary Duty Claim was Based Upon a Factual Determination that there was No Breach, Not an Erroneous Legal Conclusion that No Independent Cause of Action Exists*

We analyze the circuit court's discussion of *Kann*, and its consideration of the Minority Members' breach of fiduciary duty count, within the context of the other counts pleaded, the relief sought, and the presentation of the case. In the nine-count complaint, the Minority Members alleged several counts which they conceded were overlapping. Specifically, the Minority Members argued that the breach of fiduciary duty count overlapped with their breach of contract claims and their claims for dissolution and appointment of a receiver. At trial, the Minority Members conceded that they had no

51

claims for money damages, and they were only seeking injunctive relief related to their claims.

After conducting a six-day trial with over 100 exhibits, defense counsel moved for judgment at the conclusion of the Minority Members' case-in-chief. As the court ruled from the bench, in a format akin to an appellate argument, the trial judge permitted counsel to summarize the facts and the law that supported their position on each count. The court interjected questions to counsel as they presented their arguments and summarized the evidence. The court heard arguments of counsel on two separate days and requested written memoranda on the Minority Members' request for dissolution and receivership prior to ruling on those counts.

Ultimately, the court granted Mr. Cherneski's and the Company's motion for judgment on five of the nine claims, "find[ing] very little compelling evidence to support [the Minority Members'] case in the light most favorable to [the Minority Members] as it relates to dissolution or receivership, the breach of contract . . ., invasion of privacy, publicity, and false light." Upon the conclusion of all the evidence, the circuit court granted equitable relief on three of the Minority Members' breach of contract claims. The court found that "there is insufficient evidence to show there has been a breach of fiduciary duty" and granted judgment in favor of Mr. Cherneski on that claim.

During these arguments, counsel for the Minority Members argued that the holding in *Kann* "doesn't mean that there is [no] possible claim for breach of fiduciary duty. *You just have to decide what kind of remedy you are looking for . . .* and what version of fiduciary duty you're talking about." (emphasis added). When the court asked counsel whether the

52

breach of fiduciary duty count was an independent tort, Plaintiff's counsel stated that although she believed that it was, "Honestly, it's – *it's going to all blend together in this case*." (emphasis added). When asked again by the Court whether the fiduciary duty count "just blends into . . . counts eight and nine[,]" counsel for the Minority Members again stated that although counsel believed that the breach of fiduciary duty count was a separate count under *Wasserman*, "*I think it does blend in because I think the facts are all the same that support all these claims in that sense*." (emphasis added). The trial judge concluded that he was going to "reserve on that" count until after he reread *Kann* and *Wasserman*.

In their written memoranda summarizing the facts and law applicable to the dissolution, receiver, and breach of fiduciary duty counts, the Minority Members once again stated that "[t]he breach of fiduciary duty claim is supported by the same facts underlying the claims for dissolution and appointment of a receiver." The Minority Members then asserted that "[t]his factual overlap does not give Mr. Cherneski a free pass to avoid liability on the breach of fiduciary duty claim. He is a fiduciary who has breached his duty of care to [the Minority Members] and the LLC and should be held accountable." The Minority Members argued that "[t]he Court has the authority to find Mr. Cherneski liable for breaches of these fiduciary duties and to award fitting and equitable relief, such as specific performance of the Operating Agreement, injunctive relief, dissolution or appointment of a receiver."

When the trial next resumed, the court proceeded to discuss the counts for breach of fiduciary duty, dissolution, and the assignment of a receiver. The court stated that it had reread *Kann* and articulated that "there seem[s] to be within that case a clear recognition

53

that there is no stand-alone tort for breach of fiduciary duty. But if a person breaches their duty there is a tort." The court explained that "*Kann* is very clear in terms of its proposition that the court considers the matters in equity, not the jury." The court stated that it would "skip count seven for now" and proceed to the petition for judicial dissolution and the appointment of a receiver.

After summarizing the applicable law, the court entered judgment in favor of Mr. Cherneski and the Company on the dissolution and receiver counts. The court explained that it "is convinced that the record demonstrates that [Mr.] Cherneski and Trusox engage and continue in a lawful business which involves the development, the production, and the sale of performance athletic socks and other apparel." The court discussed the testimony of various witnesses, crediting the testimony of Mr. Cherneski describing the Company's recent production numbers, and the products that are being sold and shipped. The court rejected the testimony of Mr. Fisher that the company was insolvent, finding it not credible. The court concluded that "[t]here is so much that is speculative in this case that it is hard for the [c]ourt, considering it in the light most favorable to the non-moving party, to allow this case to continue."

In the context of Mr. Cherneski's and the Company's motion for judgment, the court did not address the breach of fiduciary duty claim. However, the court commented that "*while I'm not addressing it at this point in time*, I believe that for all intents and purposes count seven [for breach of fiduciary duty] would be effectively *perhaps* of no weight." (emphasis added).

Given the overlapping nature of the claims in this case, the court's approach to the breach of fiduciary duty count was logical and reasonable. By first addressing the overlapping claims for breach of contract, dissolution, and receiver, the circuit court peeled back and addressed each separate layer of the onion until the only remaining claim was the breach of fiduciary duty. The court methodically articulated its ruling on each count, disposing of all other counts, and did not consider the breach of fiduciary count until the conclusion of the entire case.

After the defense rested, once again, the court heard additional arguments by counsel prior to fashioning its equitable relief on the Minority Members' successful breach of contract claims, and prior to rendering its decision on the breach of fiduciary duty count, the only outstanding count. Clearly disappointed with the court's entry of judgment in favor of Mr. Cherneski and the Company on the majority of the claims, counsel for the Minority Members then stated that "I would like to point out to the [c]ourt . . . [that] there were many, many other items that the [c]ourt did not consider in its opinion that it rendered from the bench." The court responded that, "[w]ell, I considered them. *But I didn't find them compelling*." (emphasis added).

The court proceeded to rule on the equitable relief sought under the breach of contract claims upon which the Minority Members' prevailed, ordering Mr. Cherneski: (1) to make available Trusox's books and records within ten days of any reasonable request by the Minority Members and to provide them with tax documentation within 75 days of the end of each tax year; and (2) to transfer any patents in his personal name over to Trusox. The court further ordered that, pursuant to the terms of the Operating Agreement preventing family

55

members from working at the Company, Mr. Cherneski's brother could not receive any benefit in the form of compensation or stock for any work that he may perform.

As the last matter addressed by the court on the Minority Members' counts, having disposed of all the other counts, the court denied the count for breach of fiduciary duty "find[ing] [that] there is insufficient evidence to show that there has been a breach of fiduciary duty." Significantly, the trial court did *not* state that it was entering judgment in Mr. Cherneski's favor because it thought that no cause of action existed, or because the relief sought was duplicative or unavailable.

We determine that the court considered the Minority Members' breach of fiduciary duty count on its merits and entered judgment in favor of Mr. Cherneski after making a factual determination that there had been no breach of the fiduciary duty. Based upon the record, including the Minority Members' presentation of overlapping claims and overlapping remedies, it is clear that the court considered *all* of the testimony and evidence, and fashioned specific equitable relief based upon the breach of contract claims. To the extent that the Minority Members argued that they were entitled to additional, nonduplicative equitable relief based upon a breach of fiduciary duty, it is also clear that the court considered those arguments and declined to enter further equitable relief based upon its assessment of the evidence:

> There is testimony that late payments to employees have been addressed. There is testimony that current employees are being paid. There is no evidence that there is any type of law suit for any misappropriation of athletes' images, et cetera. There is nothing to indicate there is any demand or threats that any player's image or logo has led to this litigation. *It's all speculative that this could happen.*

56

(emphasis added). The court was "not required to set out in detail each and every step of [its] thought process." *Thomas v. City of Annapolis*, 113 Md. App. 440, 450 (1997) (citing *Kirsner v. Edelmann*, 65 Md. App. 185 (1985)). Nor is the trial court required to "elaborate on the reason" for its decision. *Attorney Grievance Comm'n v. Jeter*, 365 Md. 279, 288 (2001). Rather, this Court "presume[s] that trial judges know the law and correctly apply it." *Id.* We are not persuaded by the Minority Members' argument that the court did not consider its count for breach of fiduciary duty. The circuit court plainly stated its reason for denying the claim—it made a factual determination that there was "insufficient evidence" of a breach. The Minority Members have failed to persuade us that the circuit court didn't mean what it said.

2. *The Circuit Court's Factual Determination that Mr. Cherneski Did Not Breach his Fiduciary Duty, and the Court's Decision Not to Award Additional Equitable Relief on that Claim, were Not Clearly Erroneous*

The Minority Members contend that, assuming the circuit court considered its breach of fiduciary duty claim, the circuit court erred in its factual finding that "there was insufficient evidence to show that there has been a breach of fiduciary duty[,]" and erred by failing to award additional injunctive relief for the breaches that were not duplicative of its request for equitable relief arising from its other claims.

In response, Mr. Cherneski and the Company point out that there was ample evidence in the record to support the circuit court's factual determination that there was "insufficient evidence to show that there has been a breach of fiduciary duty" on any remaining allegations associated with a separate claim. Mr. Cherneski contends that the

circuit court did not err in refusing to exercise its discretion to award additional equitable relief arising from an alleged breach of fiduciary duty.

As noted above, when an action has been tried without a jury, we review the case on both the law and the evidence and will not set aside the judgment of the trial court unless it is clearly erroneous. Md. Rule 8-131(c). "The appellate court must consider evidence produced at the trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed." *Gen. Motors Corp. v. Schmitz*, 362 Md. 229, 233–34 (2001) (citations omitted). "If there is any competent material evidence to support the factual findings of the trial court, those findings cannot be held to be clearly erroneous." *YIVO Inst. for Jewish Research v. Zaleski*, 386 Md. 654, 663 (2005). Additionally, "an appellate court may affirm a trial court's decision on any ground adequately shown by the record even though the ground was not relied upon by the trial court or the parties." *Id.* (citations omitted). "We review the exercise of the trial court's discretion to grant or deny a request for injunctive relief under an 'abuse of discretion' standard." *El Bey v. Moorish Sci. Temple of Am., Inc.*, 362 Md. 339, 354 (2001) (citations omitted). Furthermore, "[i]njunctive relief will normally not be granted unless the petitioner demonstrates that it will sustain substantial and irreparable injury as a result of the alleged wrongful conduct." *Id.* at 355 (citations omitted).

Based upon our review of the record, there was ample evidence to support the circuit court judge's factual finding that there was "insufficient evidence to show that there was a breach of fiduciary duty." We also conclude that the circuit court did not abuse its

58

discretion in failing to award the additional equitable relief sought by the Minority Members related to their separate claim for breach of fiduciary duty. We examine each of the Minority Members' factual assertions of wrongful conduct, and the facts upon which Mr. Cherneski relies, which support the trial court's factual finding, and its decision not to enter additional equitable relief, below.

### a. Violation of Maryland Wage and Hour Laws

The Minority Members contend that Trusox violated Maryland wage and hour laws by paying its employees late.[14] The Minority Members contend that there was "uncontested evidence presented at trial that Trusox, at the direction of [Mr.] Cherneski and with his full knowledge, violated Maryland wage and hour law."

On this contention, despite the fact that the Company had paid its employees late in the past, which the circuit court determined was the result of cash flow issues, the court determined, based upon the testimony at trial, "that the late payments to employees have been addressed . . . [and] that current employees are being paid." Those findings are supported by the testimony of Trusox's operations manager that all wage amounts were current as of the beginning of trial. Trusox's former employee witnesses testified that they were paid all wages that they earned.

We consider the trial court's factual findings within the context of the remedy sought by the Minority Members. Maryland law is clear that an injunction is a

---

[14] Pursuant to Maryland Code Labor and Employment Article ("LE"), § 3-502(a)(1), an employer is required to set up regular pay periods and "pay each employee at least once every 2 weeks or twice in each month."

59

"preventative and protective remedy, *aimed at future acts*, and it is not intended to redress past wrongs." *El Bey*, 362 Md. at 353 (emphasis in original) (quoting *Carroll Cty. Ethics Comm'n v. Lennon*, 119 Md. App. 49, 58 (1998)). To the extent that the Minority Members sought injunctive relief for past wrongs, such as untimely payments to employees, which the trial court determined was no longer an issue, entering an injunction based upon past conduct would not have been appropriate.

### b. Mr. Cherneski's Private Placement Offering to Investors

The Minority Members assert that Mr. Cherneski's private placement offering violated the Section 5 of the Federal Securities Act of 1933 (the "Securities Act"), which makes it unlawful for any person to sell or offer to buy a security unless a registration statement is in effect for that security. 15 U.S.C. § 77e (2018). Section 4(2) of the Securities Act exempts from the Section 5 registration requirement "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d (2018). To help establish a clear path to obtaining an exemption under Section 4(2), the Securities and Exchange Commission ("SEC") has issued regulations commonly referred to as Regulation D. 17 C.F.R. § 230.500 *et seq.* (2013).

One exemption afforded in Regulation D is SEC Rule 506(b). *Id.* at § 230.506. The Minority Members contend that in undertaking the private placement offering, Trusox was relying upon the exemption afforded by Rule 506(b). The Minority Members assert that the evidence presented at trial supports a finding that Trusox "has fallen outside the 'safe harbor' of Rule 506(b) and is selling unregistered securities in violation of the [] Act." To support this assertion, the Minority Members point to the Trusox

60

Membership Interest Purchase Agreement ("MIPA"), the document presented to prospective purchasers of membership interests in the Company. The Minority Members contend that because Mr. Cherneski testified that he did not ask potential purchasers to initial and return the portion of the MIPA, Section 3.2, where the document requests that the purchaser acknowledge that he or she is an "accredited investor" by initialing the specific category into which they fall, "the Company is unable to determine whether the investors are accredited." The Minority Members also point to the testimony of an investor, who admittedly was not an accredited investor. Accordingly, the Minority Members asserted that they "proved [Mr.] Cherneski was selling unregistered securities, thereby exposing the Company to investor suits and government enforcement actions, jeopardizing [the Minority Members'] interests, and taking advantage of unwary investors." Accordingly, they assert that the "circuit court erred in not enjoining this conduct."

In response to the Minority Members' contentions, Mr. Cherneski points to conflicting evidence in the record to support the propriety of Trusox's private placement offering. In a section that stands independent of any exemption for offerings to accredited investors, Mr. Cherneski notes that Regulation D exempts an offering where "there are no more than 35 purchasers of securities from the issuer." *Id.* at § 230.506(b)(2)(i). Mr. Cherneski points out that the circuit court had evidence before it that Trusox fell under such exemption because it had only 18 investors.

Concerning "accredited investors" the federal regulations require that the "issuer" of the securities—in this case Trusox— "take reasonable steps to verify that purchasers of

61

securities . . . are accredited investors." *Id.* at § 230.506(c)(2)(ii). Mr. Cherneski testified that Trusox received signature pages of the MIPA by its investors, wherein "each investor agree[d] to be bound by all terms and provisions of [the] Agreement," including the representations and warranties concerning their status as an accredited investor.

Mr. Cherneski further testified that he retained securities counsel to advise him concerning the private placement offering and that he requested, received, and at all times followed his securities counsel's advice.

c. Minority Members' Contention that Mr. Cherneski Misled Potential Investors

The Minority Members also allege that Mr. Cherneski "blatantly misled potential investors in violation of . . . the Maryland Securities Act[, CA § 11-302]." To support this assertion, the Minority Members point to the fact that Trusox "failed to update the MIPA to inform potential investors of [the Minority Members'] lawsuit."

Once again, Mr. Cherneski points out that there is evidence in the record to refute the Minority Members' allegations. Although this lawsuit may not have been specifically referenced in the MIPA, Mr. Cherneski testified at trial that "I told everybody about the pending lawsuit." Mr. Cherneski also testified that, in consultation with counsel, he transmitted to prospective investors a packet of information that included a copy of the Minority Members' lawsuit.

The Minority Members assert that Mr. Cherneski "sent misleading financial forecasts to potential investors" with inaccurate income projections that are not consistent

with the pairs of socks actually manufactured.  They also point to projections associated with the sale of cleats, "although no cleats had actually been sold."

In response to these assertions, Mr. Cherneski refers us to a disclosure document that he attached as an exhibit to the MIPA, explaining that forecasts "are based on assumptions and estimates and are completely dependent on future events and transactions" and are also "inherently subject to varying degrees of uncertainty."  The exhibit further stated that "[a]ccordingly, no assurance is or can be given that any or all of the forecasts set forth in the Business Plan will or can be realized."  Trusox accompanied this disclosure with a four-page statement of "risk factors" in investing in the Company, including the inherently speculative nature of the business.  Mr. Cherneski also testified that he gave any prospective investor who asked "all the financial records that we had up to [sic] date that we had[,]" and that he never refused any request for financial information.

The Minority Members also allege that Mr. Cherneski sent emails to potential investors "saying that he turned down a $40 million offer from Nike.  There was no such offer."  The Minority Members acknowledge that "[t]here was at most a request to negotiate a non-binding letter of intent from Nike, and even that never occurred."  The Minority Members assert that they sought an injunction because they "wanted to stop [Mr.] Cherneski from making material false statements, like these, to potential investors that could get the Company sued or attract enforcement actions."  Mr. Cherneski counters this assertion, claiming that the "record supports that there was no misrepresentation of

an offer by Nike." He points to the trial testimony, which establishes that the offer was verbal.

### d. Minority Members' Contention that Mr. Cherneski Violated Trademark Laws and Right of Publicity Laws

Finally, the Minority Members contend that Mr. Cherneski "violated the Lanham Act[15] and sports figures' rights of publicity[]" by "using images of professional athletes and trademarks to market Trusox to consumers and to encourage investments in Trusox."

In response to this allegation, Mr. Cherneski points out that the circuit court found that the Minority Members' allegations of misappropriation of athletes' images was "speculative." Mr. Cherneski confirmed in his testimony that Trusox paid for a license with Getty Images to use the photographs of professionals and further asserts that the trial record is devoid of any evidence that this is improper. The record also establishes that Mr. Cherneski relied upon advice of legal counsel as to how and under what conditions athletes' images could be used. There is no evidence of athletes raising any question about the use of their images.

### e. Sufficiency of the Evidence Generally and Discretion to Decline to Award Additional Equitable Relief

We hold that there is ample evidence in the record to support the trial court's factual determination that there was "insufficient evidence to show there has been a breach of fiduciary duty." Accordingly, the court's decision to enter judgment in favor of Mr.

---

[15] The Lanham Act (also known as the Trademark Act of 1946) is the federal statute that governs trademarks, service marks, and unfair competition. *See* 15 U.S.C. ch. 22 (2018). The Minority Members alleged that Mr. Cherneski's marketing efforts violated 15 U.S.C. § 1114 (2018) and 15 U.S.C. § 1125(a) (2018).

Cherneski was not clearly erroneous. As noted above, the circuit court specifically commented on some of the allegations of "wrongful conduct" that form the basis for the Minority Members' request for injunctive relief arising from an alleged breach of duty and rejected them as either no longer being an issue (commenting that late payments "have been addressed") or as being speculative (observing that there were no lawsuits arising from misappropriation of athletes' images, and stating, "It's all speculative that this could happen"). The circuit court did not abuse its discretion in failing to award equitable relief in the form of a preventative injunction on the Minority Members' breach of fiduciary duty claim.

*Appropriateness of the Attorneys' Fees Award*

Next, we turn to the circuit court's award of attorneys' fees under the fee-shifting provision of the Operating Agreement. The attorneys' fees dispute between the parties centers on the interpretation of Section 14.13 of the Operating Agreement, which provides as follows:

> Governing Law: Jurisdiction, Enforcement. All questions concerning the construction, validity and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the laws of the State of Maryland. Any action, suit or proceeding arising out of, connected with, or pertaining to this Agreement shall be submitted exclusively to the state or federal courts sitting in Maryland, and venue for any such action, suit or proceeding shall be in the state or federal courts sitting in Maryland. All parties to the Agreement (including any Member who becomes a party to this Agreement after the Effective Date) hereby consent to the jurisdiction of such courts and irrevocably waive any objection as to personal jurisdiction, venue or inconvenient forum. In the event any legal action is brought by a party arising hereunder or between the parties,

65

> the court shall award to the substantially prevailing party all costs and expenses, including reasonable attorneys' fees, incurred in such action including costs incurred prior to commencement of any such legal action and all costs and expenses, including reasonable attorneys' fees incurred in any appeal from any action to enforce any of said terms, covenant and conditions.

The parties offered competing interpretations of the fee-shifting provision set forth in Section 14.13. Focusing on the phrase "arising hereunder" in that sentence, the Minority Members contend that the fee-shifting does not apply to all disputes between the parties, but only to those claims that are based expressly on the Operating Agreement itself. Based upon that interpretation, the Minority Members contend that they, and not Mr. Cherneski and Trusox, were the prevailing parties because only the breach of contract counts (Counts I, II, IV)—the counts on which they prevailed—were based expressly on the Operating Agreement.

Mr. Cherneski contends that one must read the clause in its entirety, and that the Minority Members' construction ignores the additional language that follows the disjunctive "or"—"arising hereunder *or* between the parties." Under this interpretation, Mr. Cherneski asserts that all of the claims arise out of the same action between the parties, regardless of whether they are based expressly on the Operating Agreement, and are covered by the fee-shifting provision. Moreover, Mr. Cherneski also contends that even if one accepts the Minority Members' narrow interpretation of the language, Mr. Cherneski and the Company are still the "prevailing parties" because the Minority Members' request for dissolution or the appointment of a receiver both "arise" under the Operating Agreement and were the more significant claims in the case.

66

After hearing argument and considering additional briefing, and after conducting a hearing on the appropriateness and reasonableness of the attorneys' fees over the course of a three-day evidentiary hearing, the court issued a memorandum opinion, in which it rejected the narrow interpretation offered by the Minority Members, stating that the contractual provision "means just what it says" and applied to all claims brought "hereunder or between the parties." The court also determined that Mr. Cherneski and Trusox were the substantially prevailing parties because the claims on which they prevailed "were of greater significance and more important than the claims" upon which the Minority Members prevailed. Based on its consideration of all of the allegations, the court found that "all of the [Minority Members'] claims relate to a dispute between the parties that falls within the confines of the fee-shifting provision of the Operating Agreement . . . ."

The court also rejected the Minority Members' argument to apportion the attorneys' fees based on the counts upon which each party prevailed, noting that the Minority Members "combined all counts to the action in this case, whether the claims arose in equity or contract, forcing the Defendants to defend all claims in this action." The court discussed each factor enumerated under Maryland Rule 2-703(f)(3), as required by Rule 2-705, and determined the fees to be fair and reasonable.

Based upon this analysis, the circuit court entered judgment against the Minority Members in favor of Mr. Cherneski in the amount of $453,806.49, representing his attorneys' fees, and entered judgment against the Minority Members in favor of Trusox in the amount of $189,269.15, for its attorneys' fees.

## 1. The Circuit Court Correctly Interpreted the Contractual Language of the Fee-Shifting Provision of the Operating Agreement

The attorneys' fees provision in this case arises out of a contract between the parties. We review the circuit court's interpretation of the contract *de novo*, while the determination of reasonableness is a factual determination that will not be overturned unless clearly erroneous. *See Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 392 (2019) (citations and quotations omitted) ("[T]he interpretation of a contract . . . is a question of law subject to *de novo* review."); *Myers v. Kayhoe*, 391 Md. 188, 207 (2006) (citations omitted) ("The trial court's determination of the reasonableness of attorney's fees is a factual determination within the sound discretion of the court, and will not be overturned unless clearly erroneous.").

Contractual fee-shifting provisions providing for awards of reasonable attorneys' fees and costs to the prevailing party are generally valid and enforceable. *See Myers*, 391 Md. at 207. We interpret contracts under the objective theory of contract interpretation, which provides that "unless a contract's language is ambiguous, we give effect to that language as written without concern for the subjective intent of the parties at the time of formation." *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 86 (2010) (citing *Cochran v. Norkunas*, 398 Md. 1, 16 (2007)). "In interpreting a contract provision, we look to the entire language of the agreement, not merely a portion thereof." *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2008) (citing *Jones v. Hubbard*, 356 Md. 513, 534–35 (1999)). We consider the language of the contract in its "customary, ordinary, and accepted meaning[.]" *Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210 (2001)

(citations omitted); *see also Nova Research*, 405 Md. at 448. The language is ambiguous if, "when viewed from [a] reasonable person perspective, that language is susceptible to more than one meaning." *Ocean Petroleum*, 416 Md. at 87 (citing *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 80 (2006)).

The parties make the same contractual analysis arguments on appeal that they made to the circuit court. Focusing on the language "arising hereunder[,]" the Minority Members argue that the fee-shifting provision must be read narrowly to apply only to claims brought to enforce the terms, covenants, and conditions of the Operating Agreement. They claim that "[of] the six counts on which [Mr.] Cherneski prevailed, none 'arise under' the Operating Agreement." Accordingly, they argue that because they prevailed on the breach of contract claims, which they contend "arise under" the Operating Agreement, they are the substantially prevailing party. They assert that the phrase "or between the parties" must be interpreted within the context of the Operating Agreement, taking into consideration the surrounding language of the paragraph. The Minority Members argue that, if the fee-shifting clause applies to any claim "between the parties," then the "arising hereunder" language becomes meaningless. The Minority Members contend that the only reasonable way to interpret the fee-shifting provision is to limit it to claims that "arise under" the Operating Agreement. The Minority Members further assert that there is a "recognized distinction" under Maryland law between claims "arising out of" and claims "arising hereunder." Citing to *Weichert Co. of Maryland, Inc. v. Faust,* 191 Md. App. 1, 10 (2010), *aff'd*, 419 Md. 306 (2011), the Minority Members argue that the Maryland appellate courts

69

have distinguished contractual language "arising out of" from "arising hereunder[,]" and have determined that the latter phrase is narrower than the former.[16]

Mr. Cherneski and Trusox argue that the Minority Members' plain language analysis does not take into account the language that follows "arising hereunder[,]" namely, the separate phrase "or between the parties." Mr. Cherneski and Trusox contend that the Minority Members' narrow interpretation of the language "arising hereunder" renders the language "or between the parties" nugatory. We agree with Mr. Cherneski's interpretation, and the plain language analysis undertaken by the circuit court.

As we previously noted, a limited liability company is a creature of contract. Under the LLC Act, the General Assembly described the intent of the Act as giving "the maximum effect to the principles of freedom of contract and to the enforceability of operating agreements." CA § 4A-102(a). The Act therefore permits members of an LLC to "enter into an operating agreement to regulate or establish any aspect of the affairs of the limited liability company or the relations of its members." CA § 4A-402(a).

The LLC Act permits a Maryland court to enter a decree of involuntary dissolution of an LLC only if "it is not reasonably practicable to carry on the business in conformity with the articles of organization or the operating agreement." CA § 4A-903. The statutory

---

[16] We disagree with the Minority Members' contention that *Weichert Co. of Maryland, Inc. v. Faust,* 191 Md. App. 1, 10 (2010), *aff'd*, 419 Md. 306 (2011) supports their interpretation. In *Weichert*, the Court of Special Appeals discussed the word "hereunder" in the context of a fee-shifting provision that only applied to one paragraph of the contract addressing breach of a duty of loyalty claims and did not apply to any other claims arising under the contract. *Id.* at 8. Here, the attorneys' fees paragraph applies to *any legal action* arising under the Operating Agreement.

standard makes it clear that dissolution of an LLC is "initially a contract-based analysis." *In re 1545 Ocean Ave., LLC*, 72 A.D.3d 121, 128 (N.Y. App. Div. 2010).

The record demonstrates that the Minority Members relied upon the Operating Agreement to allege not only their breach of contract claims, but also their dissolution claim. The Minority Members were cognizant that the LLC statute requires a contract-based analysis. They asserted that "Trusox is unable to perform its purpose as defined in the Operating Agreement[]"; and therefore, they met the legal standard for judicial dissolution. The record also reflects that the Minority Members expressly relied upon the Operating Agreement when making their claims for breach of fiduciary duty. The Minority Members argued to the trial court that Mr. Cherneski breached "his duty to act with care, competence, and reasonable diligence, *and his duty to act in accordance with the Operating Agreement*—a contract that he entered into in his role as an agent of Trusox." (emphasis added).

According to Black's Law Dictionary, "hereunder" means "[i]n accordance with this document." Hereunder, Black's Law Dictionary 745 (11th Ed. 2019). A review of the Complaint and the arguments of counsel reflect that a majority of the claims asserted by the Minority Members are firmly rooted in the Operating Agreement. In other words, the unsuccessful claims for dissolution and breach of fiduciary duty "arise under" the contractual umbrella of the Operating Agreement.

Our plain language analysis does not stop, however, with the phrase "arising hereunder." The language in the parties' contract is broader than that. The fee-shifting provision states, in pertinent part, that "[i]n the event *any legal action is brought by a party*

71

*arising hereunder or between the parties,* the court shall award the substantially prevailing party all costs and expenses, including reasonable attorneys' fees, incurred in *such action . . . .*" The fee-shifting provision uses the disjunctive word "or" to apply its terms separately, independently, and alternatively, to (i) any action "arising hereunder" *or* (ii) any action "between the parties." Maryland courts generally interpret "or" in the disjunctive sense when they construe statutes. *SVF Riva Annapolis, LLC v. Gilroy*, 459 Md. 632, 642 (2018). "Or" is a conjunction "[u]sed to indicate an alternative, usually only before the last term of a series . . . ." *Id*. at 642 (quoting The American Heritage Dictionary of the English Language 1236 (4th ed. 2006)). "Each item in a string of terms, separated by the disjunctive 'or,' is given independent meaning." *Bainbridge St. Elmo Bethesda Apartments, LLC v. White Flint Express Realty Grp. Ltd. P'ship, LLLP*, 454 Md. 475, 491 (2017). Under the plain language of the Operating Agreement, the fee-shifting provision applies to both categories—claims "arising hereunder" or claims "between the parties." The Minority Members' narrow interpretation of "arising hereunder" would render the word "or" meaningless.[17]

---

[17] The Minority Members argue that *Tomran, Inc. v. Passano*, 391 Md. 1, 16 (2006) applies, and to interpret "arising hereunder" and "between the parties" separately, will render the language "arising hereunder" nugatory. We find the analysis in *Tomran* to be inapposite because that case involved a forum selection clause that had an entirely different application than the fee-shifting provision here. *Id.* at 16. The forum selection clause in *Tomran* applied to a "Deposit Agreement and Receipts and all rights hereunder and thereunder." *Id.* at 13. We determined that "'hereunder and thereunder' limit[ed] the scope of the choice of law clause to those rights specifically stated in the Deposit Agreement and the Receipts." *Id.* at 17. By contrast, here, the language includes two clauses separated by the disjunctive "or."

The Minority Members alleged nine counts consisting of three counts of breach of contract, invasion of privacy (false light), invasion of privacy (right of publicity), dissolution, appointment of receiver, and breach of fiduciary duty. All nine either "arise under" the Operating Agreement "*or* between the parties . . . in such action".[18] Under the plain language of the fee-shifting provision of the Operating Agreement, the Court correctly determined that Trusox and Mr. Cherneski were the "substantially prevailing parties," having entered judgment in their favor on six of the nine counts. We will not rewrite the terms of the contract because the Minority Members are dissatisfied with the language.[19]

> 2. *The Circuit Court Did Not Err in Determining that Trusox and Mr. Cherneski were the Substantially Prevailing Parties, Thereby Entitling Them to Their Attorneys' Fees*

The Minority Members disagree with the circuit court's conclusion that Mr. Cherneski and Trusox were the "substantially prevailing parties." The circuit court's conclusion was not clearly erroneous. It is clear from the record that the Minority

---

[18] The invasion of privacy counts (false light and right of publicity) concerned Mr. Cherneski's marketing efforts. As such, they also arose out of his duties as the CEO, President, and majority member. The circuit court dismissed these claims at the end of the Minority Members' case, finding "very little compelling evidence" to support those claims.

[19] We also disagree with the Minority Members that an interpretation that gives independent meaning to the clause: legal action arising . . . "between the parties" could be construed as applying to *any* legal action between the parties, including legal action unrelated to the operations of Trusox. Based on its inclusion and placement in the Operating Agreement, "or between the parties" remains limited to claims flowing from or originating from Trusox and the parties' relationship as members of Trusox. Lawsuits entirely unrelated to Trusox and its operations do not invoke the fee-shifting provision simply on the basis of the parties involved.

Members' primary objective was to obtain dissolution or a receivership. The court rejected this extraordinary relief, commenting that "the parties have contracted and bargained – for lack of a better word – Mr. Cherneski is in charge," and because "[t]here is so much that is speculative in this case that it is hard for the Court, considering it in the light most favorable to [the Minority Members], to allow the case to continue."

Based upon the record, including the nature of the counts and the remedies sought, the circuit court did not err in finding that "the claims [the Minority Members] prevailed upon were minor and insignificant in comparison to the claims [Mr. Cherneski and the Company] prevailed upon," or in finding that Mr. Cherneski and the Company were therefore the "prevailing party."

3. *The Circuit Court Did Not Err in Failing to Apportion the Attorneys' Fees*

Nor did the circuit court abuse its discretion by awarding Mr. Cherneski and Trusox the entirety of their attorneys' fees. The circuit court noted that the Minority Members "combined all counts in the action in this case, whether the claims arose in equity or contract, forcing [Mr. Cherneski and the Company] to defend all claims in this action." The circuit court's approach to the attorneys' fees in this case is consistent with the "common core of facts" doctrine, which the Supreme Court established in *Hensley v. Eckerhart*:

> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency . . . . In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of

74

> discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. 424, 435 (1983).

Although we have not specifically used the term "common core of facts," the Court of Special Appeals determined that the doctrine comports with Maryland law, and adopted this approach in *Weichert*, 191 Md. App. at 15–19.[20] In *Weichert*, the Court of Special Appeals agreed with the appellee that the doctrine was consistent with ideas generally espoused by this Court in *Diamond Point Plaza L.P. v. Wells Fargo Bank, N.A.*, 400 Md. 718, 761 (2007). *Weichert*, 191 Md. App. at 16. As the intermediate appellate court explained in *Weichert*, the circuit court may encounter "philosophical problems" when apportioning fees where an agreement shifts costs to a prevailing party on some claims but may not apply to other claims. *Id.* at 16–17. The Court of Special Appeals explained that a problem may arise "at a fundamental level because certain costs are necessary to litigate each claim successfully and yet do not change as the number of claims increases." *Id.* at 17. The court explained how the "common core of facts" doctrine can be applied to address attorneys' fees arising in such circumstances:

> In the hypothetical case of a single question relevant to multiple claims, it is clear that a party prevailing on one but not all claims should receive some compensation, and it is within reason to assign the question's cost to the single claim that merits a fee award. While this may appear to be a windfall to the fee recipient, it is only so in hindsight. If the claim had been brought alone, the prevailing litigant would have incurred

---

[20] In *Weichert Co. of Maryland, Inc. v. Faust*, we affirmed in its entirety the judgment of the Court of Special Appeals, with no discussion of the "common core of facts" doctrine. 419 Md. 306 (2011).

its necessary costs and the court could do nothing but award the expense as a whole. We can see no reason why the prevailing litigant should necessarily be denied this amount merely because the expense was related to other claims.

We have therefore established that a court could reasonably assign to a single fee-shifting claim any cost that would have been necessary to litigate the claim as if it had been brought alone. However, the "common core of facts" doctrine is somewhat broader than that. If the court finds that two claims are factually related, the doctrine not only awards the costs common to all claims, but also awards costs that arise solely by virtue of the *non*-fee-shifting claim.

*Id.* at 18 (emphasis in original).

We agree with the Court of Special Appeals that the "common core of facts" doctrine comports with Maryland law and may be a reasonable method for apportioning attorneys' fees in certain cases. We agree with Trusox and Mr. Cherneski that this was an appropriate methodology for determining attorneys' fees in this case and that the circuit court did not err in applying a methodology that is consistent with that doctrine. Where, as here, a plaintiff presents multiple claims "involv[ing] a common core of facts or . . . based on related legal theories[, m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Hensley*, 461 U.S. at 435.

As noted in detail above, many of the nine counts alleged in the Complaint contained "overlapping" facts and relief. The Minority Members conceded as much, describing the overlapping nature of the breach of fiduciary duty claims with the breach of contract, dissolution, and receiver claims. Given the Minority Members' approach to this case, and

76

the entirety of the record before it, the circuit court did not err in exercising its discretion to award Mr. Cherneski and Trusox the entirety of their attorneys' fees because the Minority Members "combined all counts to the action in this case, whether the claims arose in equity or contract, forcing [Mr. Cherneski and Trusox] to defend all claims in the action."

We reject the Minority Members' argument that the circuit court erred in not applying proportionality to reduce the fee award based upon the result obtained. To be sure, the circuit court's use of a proportionality theory may be appropriate in certain circumstances. *See Ochse v. Henry*, 216 Md. App. 439, 460–69 (2014), *cert. denied*, 439 Md. 331 (2014) (upholding the circuit court's use of a proportionality theory to take into account the results obtained by each side of the litigation). However, it does not follow that use of a proportionality theory is required of the circuit court when performing its discretionary analysis in every instance. *Id.* at 460 (explaining that the application of a proportionate award, or the application of the "common core of facts" doctrine is "in the court's discretion"). "Certain circumstances could make another method more reasonable, but we leave that to the discretion of the trial court." *Weichert*, 191 Md. App. at 19–20.

### III.

### Conclusion

For the reasons above, we hold that managing members of an LLC owe common law fiduciary duties to the LLC and to the other members based upon the fiduciary relations governing principles of agency.

We answer the certified questions as follows. We hold that under *Kann* and our jurisprudence that followed, a breach of fiduciary duty may be actionable as an independent

cause of action. To establish a breach of fiduciary duty, a plaintiff must demonstrate: (1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. The remedy for the breach is dependent upon the type of fiduciary relationship, and the historical remedies provided by law for the specific type of fiduciary relationship and specific breach in question, and may arise under a statute, common law, or contract. To clarify the Court's analysis described in *Kann*, the court should consider the nature of the fiduciary relationship and possible remedies afforded for a breach, on a case-by-case basis. If the plaintiff describes a fiduciary relationship, identifies a breach, and requests a remedy historically recognized by statute, contract, or common law applicable to the specific type of fiduciary relationship and the specific breach alleged, the court should permit the count to proceed. The cause of action may be pleaded without limitation as to whether there is another viable cause of action to address the same conduct. This does not mean that every breach will sound in tort, with an attendant right to a jury trial and monetary damages. The remedy will be dependent upon the specific law applicable to the specific fiduciary relationship at issue.

We hold that in this case, the circuit court did not err in entering judgment in favor of Mr. Cherneski on the breach of fiduciary duty count. The court made a factual determination that there was insufficient evidence of a breach of fiduciary duty. The court's factual determination was not clearly erroneous. Nor did the court abuse its discretion in refusing to award equitable relief on the Minority Members' assertions of unlawful conduct associated with their breach of fiduciary duty claim.

78

We hold that the circuit court correctly interpreted the fee-shifting provision of the parties' Operating Agreement and did not err in determining that Mr. Cherneski and the Company were the "substantially prevailing parties" and in awarding the defendants' their attorneys' fees.

The circuit court did not err in awarding Mr. Cherneski and Trusox the entirety of their fees. The circuit court's approach to awarding attorneys' fees in this case is consistent with the "common core of facts" doctrine, which was a reasonable method for apportioning attorneys' fees in this case.

**CERTIFIED QUESTIONS ANSWERED. JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. APPELLANTS TO PAY COSTS.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/3a19mcn.pdf